[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AS CONCERNS THE PLAINTIFF'S MOTION FOR MODIFICATION, DATED SEPTEMBER 12, 2002
This motion for modification pertains to support.
By way of background, on August 10, 2000, the court, Purtill, J., heard evidence concerning the matter of Mary Hensch versus Patrick Hensch and issued a judgment incident thereto. Pursuant to the judgment, the marital union was dissolved. Incident to the terms and conditions set forth in the judgment, the parties were to share joint custody of the minor children, Felicia Hensch, born December 8, 1990 and Zachary Hensch, born March 23, 1995.
Pursuant to the terms of the judgment, child support was to the following effect: the defendant shall pay to the plaintiff the sum of $176.13 per week by an immediate wage garnishment. Article 2, as concerns child support, also touched on the percentages as concerns uncovered medical and dental expenses. Article 3 of the judgment indicated there shall be no award of alimony to either party. The judgment set forth other orders as concerns the former home of the parties prior to the dissolution located at 26 Penncove Road in Niantic.
The judgment also touched on the defendant's State of Connecticut Defined Pension Plan and the fact that he might retain the same.
The motion for modification of support, dated September 12, 2002, represents "Mr. Hensch has added another income to his regular income." At the time of the petition for dissolution of the marriage and hearing before the court, Purtill, J., the defendant filed a financial affidavit indicating that he held a position as a corrections officer for the State of Connecticut; that his gross weekly wage incident to that position was $904.04; deductions of $329.92 for a net of $574.12. As of the date of the defendant's financial affidavit; to wit, August 10, 2000, claimed weekly expenses were $715.97; debt shown as $14,540.00. The 26 Penncove CT Page 1220 Road, Niantic property was valued at $153,246.00 with a mortgage of $126,000.00 for an equity of $27,246.00. Pursuant to the terms of the decree, the title of that property is now in the name of the plaintiff. The affidavit reflected two motor vehicles with a combined equity of $8,000.00, a camp trailer with a minus equity, State of Connecticut pension valued at $32,697.05 and a preferred compensation plan valued at $34,281.51; total cash value of all assets reflected on the affidavit as of that date for the defendant, $55,589.12.
At the time of the dissolution, the plaintiffs financial affidavit reflected that the plaintiff was an assistant manager at General Equities, Inc., gross weekly wage, $510.00; deductions, taxes, etc., $123.00 for a net of $387.00. In addition, the amount of $42.33 was reflected as a commission received by the plaintiff so that her total net weekly income at the time of the decree was $429.41. Weekly expenses of $909.53. Debt, $4,700.00. The plaintiff valued the 26 Penncove Road, Niantic property at $131,000.00; mortgage, $127,991.82 for an equity of $3,008.18. Household furnishings, $3,100.00; a lawn mower, $100.00; Chelsea Groton Savings Bank, $100.00; Aetna 401K valued as of June 30, 2000, $10,990.00; total value of all assets as of the time of the execution of this financial affidavit by the plaintiff, $17,298.00.
Prior to the instant hearing, the court, Devine, J., on motion, modified the child support order to $285.00 a week. That order was subsequently vacated without prejudice by Devine, J., on November 12, 2002 pursuant to a motion filed by defendant's counsel.
The matter came on for hearing on January 13, 2003 and the parties appeared before the court with their respective counsel, presented financial affidavits and plaintiffs counsel presented a. long list of agreed exhibits which were presented to the court.
On the basis of the financial affidavit filed on January 13, 2003, as to the plaintiff, the court finds that she is assistant manager at General Equities, Inc., gross weekly wage, $645.17; tax, deductions, etc., $147.47; net weekly wage $497.70. The order of support of $176.00 is reflected on the affidavit so that the plaintiffs total net income was represented to be $673.70. Total weekly expenses, $922.25. Debt, $300.00. The plaintiff at this time valued the 26 Penncove Road, Niantic property at $225,000.00; mortgage of $152,000.00 for an equity of $73,000.00. This is the property acquired by the plaintiff pursuant to the decree of Purtill, J. The plaintiff has a 1999 Ford expedition; value not disclosed. Furnishings of the home, $2,000.00; Fleet Bank checking, $100.00; Aetna 401K, $14,484.00; and an item shown as "Comp from Ex-spouse, $17,005.00." Total cash value of all assets pursuant to the CT Page 1221 affidavit, $104,589.00.
The defendant, as of the date of hearing, pursuant to his financial affidavit, shows his position as a corrections officer at Corrigan; gross weekly wage, $858.00; deductions, $213.00; net, $645.00. The affidavit reflects rental income from various properties, $570.00; and then sets forth expenses or mortgage payments incident thereto allegedly resulting in a minus $59.00 so that the total net weekly wage, according to the financial affidavit, is $586.00. Total weekly expenses, $816.13; debt, $27,000.00.
Since the time of the decree of dissolution, the defendant has acquired the following properties: Pattagansett Road, East Lyme valued at $130,000.00; mortgage, $115,700.00 for an equity of $14,300.00. West Main Street, Niantic valued at $45,000.00; mortgage, $33,300.00 for an equity of $11,700.00. Black Point, Niantic valued at $75,000.00; mortgage, $50,700.00 for an equity of $24,300.00. A 1996 Ford Explorer valued at $7,500.00,0 equity. A 2001 Harley motorcycle valued at $14,800.00,0 equity according to the return. Chelsea Groton Savings Bank, $3,500.00; Ameritrade stock, $492.00; SERS Pension, $28,436.00; Aetna Deferred Comp ING, $25,150.00; total $53,586.00. In addition, a 1988 18-foot hydro sport vessel, a 1999 24-foot trailer, mortgage, escrow, balances of $869.00, $1,126.00, $2,677.00. Total cash value of all assets, $121,555.00.
On the basis of the Child Support Guideline worksheet prepared by the defendant's counsel, it is represented that the recommended support order be $187.00.
The defendant is a corrections officer at the Corrigan Correctional Facility and has been in that category since October 6, 2002. The defendant was recently demoted in his position, which was a management position, with regard to certain conduct on the defendant's part which apparently caused his demotion.
Prior to the defendant's demotion, his bi-weekly compensation had been greater than what is presently the case. The defendant represented that he is appealing his demotion; that his gross earnings in 2001 were to the amount of $53,000.00. The defendant gets a cost of living adjustment incident to his work. The defendant's earnings are directly deposited to an appropriate account.
The defendant presently has four rental units incident to which he receives certain rent monies. In addition, he looks after a rental account for his parent-father which is in the amount of about $600.00 a CT Page 1222 month.
The defendant, since the dissolution, purchased a small boat for $1,000.00. One of the properties purchased by the defendant was at 184 West Main Street.
The testimony indicated that since the time of the decree, as concerns income received from the various properties acquired by the defendant, that for the period February through September 2001, that the defendant had received and/or deposited $17,324.74. As reflected on the respective financial affidavits; that is, those that were filed at the time of the dissolution and those currently filed, none of the properties presently owned by the defendant were held by him at the time of the decree. All of the presently listed properties of the defendant are properties acquired since the time of the decree as well as the Harley motorcycle.
The defendant represents that he is required to devote long hours with regard to management of the properties which he has acquired; represents that he is required to pinch pennies. The defendant suggests that his former spouse, the plaintiff, should follow his course of conduct and become actively involved in business matters. None of the properties presently owned by the defendant are exposed for sale.
Apparently after the decree of dissolution, in an effort to perhaps try and breathe new life into the former marriage, there was a period of time that the parties resided together.
The properties presently owned by the defendant are condominiums and the defendant's position is to the effect that he is following this course in order that at a later point in life he may be in a position where he can materially help the two children.
Prior to his demotion, the defendant was a lieutenant at the York Correctional facility. He represented that he visits with the children two days a week. The defendant currently resides with his girlfriend who owns the property in which he is residing. It is represented that the defendant pays the girlfriend rent.
The two children are Felicia, age 12 and Zachary, age 7. Both are indicated to be in good health. Felicia is in the seventh grade; Zachary in the second. Both allegedly doing well academically. The child support order entered by the court, Purtill, J., was $176.13. The request at this time is that it should be increased to $253.00.
The witness Alicia Stopa testified she is a prior tenant of the CT Page 1223 defendant and testified as to the amount that she initially paid the defendant for the unit that she occupied; to wit, $725.00 a month.
The testimony indicated that some of the tenants in the condominiums owned by the defendant are occupied by co-workers at the correctional facility.
The testimony indicated that the children are emotionally stable; that there is a good emotional bond between the children and both of the parents. The plaintiff is age 34 and in good health. She is a high school graduate.
The 1999 Ford motor vehicle purchased by the plaintiff was made possible by virtue of funds given to her by her family.
The plaintiff has held her present position for about 15 years.
The, reconciliation period earlier adverted to was for the period April 1, 2001 to October 1, 2001. During that period of time, the plaintiff returned to the defendant the child support payments provided for under the terms of the decree.
At the time of the hearing, plaintiffs counsel presented by agreement 25 exhibits.
From Plaintiff's Exhibit 1, a statement entitled, "Amounts Deposited into Chelsea Groton Account," by the defendant; January 11, 2002, $5,299.53. February 9, 2002, $4,123.61; March 9, 2002, $5,571.59; April 11, 2002, $6,913.11; May 11, 2002, $5,010.64; June 11, 2002, $7,863.81; July 11, 2002, $6,457.78; August 10, 2002, $8,436.02; September 11, 2002, $5,356.52; October 11, 2002, $5,406.15; total deposits, $60,438.76.
In addition, this exhibit contains information with regard to the fair market rental based upon actual receipts of rents as concerns East Pattagansett and a second unit at that location, Niantic Gardens and Black Point.
The exhibit indicates expenses incident thereto totaling $528.41. Year-to-date principal payments on mortgage contained within the confines of this exhibit, 127 Black Point Road, $2,048.75; 184 West Main Street, $1,006.95; 103 East Pattagansett, $1,253.64; total principal paid on rental properties in 2002, $4,309.34.
Income from the defendant's employment, according to the exhibit, CT Page 1224 gross, $986.40; deductions of $330.19 for a net of $656.21. According to this exhibit, the total income available for support is to the amount of $943.23.
The, exhibits presented to the court include the figures reflected on Plaintiffs Exhibit 1, which the court has touched on.
Exhibit 2, Defendant's Summary of Rental Income Figures.
Exhibit 3, Letter from Employer Regarding Cost of Living Increase.
Exhibit 4, Loan Application dated February 2, 2001 at 184 West Main Street.
Exhibit 5, HUD, dated February 28, 2001 for 184 West Main Street.
Exhibit 6, Loan Application, dated March 23, 2001 for Harley and Ford Explorer.
Exhibit 7, Loan Application for 127 Black Point Road.
Exhibit 8, HUD, dated May 21, 2001 for 127 Black Point Road.
Exhibit 9, Loan Application dated July 23, 2001 for 103 East Pattagansett.
Exhibit 10, HUD, dated September 13, 2001 for 103 East Pattagansett.
Exhibit 11, Loan Application, dated May 6, 2002 for $6,500.00 cash.
Exhibit 12, Lease for 184 West Main Street.
Exhibit 13, End of Year Mortgage Statement for 184 West Main Street.
Exhibit 14, End of Year Mortgage Statement for 127 Black Point Road.
Exhibit 15, End of Year Mortgage Statement for 103 East Pattagansett.
Exhibit 16, Pay Records of the Defendant.
Exhibit 18, Financial Affidavit of Mary Hensch.
Exhibit 19, Financial Affidavit of Patrick Hensch from Time of Divorce, August 2000.
Exhibit 20, Current Financial Affidavit of Patrick Hensch. CT Page 1225
Exhibit 21, Guideline Worksheets.
Exhibit 22, 2001 Tax Return of the Defendant.
Exhibit 23, Ad from the New London Day, dated January 4, 2003.
Exhibit 24, Ad from New London Day, dated August of 2002.
Exhibit 25, Letter from Mr. Hensch, dated August 24, 2001.
As concerns the various exhibits presented to the court, the court makes the following observations: Plaintiffs Exhibit 21 would suggest that the child support should be in the amount of $256.08 weekly. A second guideline worksheet presented by plaintiffs counsel would suggest that the weekly support for the children should be $233.78.
Plaintiff's Exhibit 22, the 2001 1040 federal income tax return filed by the defendant indicates that the total income reflected on said return was to the amount of $52,006.00 for calendar 2001.
Plaintiffs Exhibit 23 is merely a notice from the Day Publishing Company with regard to a charge for an ad concerning properties owned by the defendant.
Plaintiffs Exhibit 25 is a document under the signature of the defendant. The court cannot tell to whom it is addressed indicating certain bank deposits that the defendant made as set forth on the exhibit.
Plaintiffs Exhibit 24 is a portion of the New London Day for January 4, 2003 concerning rents.
Plaintiffs Exhibit 26 is a copy of a real estate lease between the defendant and the tenant Stopa as concerns the lease of premises at 103 East Pattagansett Road, Apartment 1. The lease period covered is September 1, 2001 to August 31, 2002. The monthly rental is $725.00.
Plaintiffs Exhibit 16 is a State of Connecticut DOC District 3 Eastern earnings history report setting forth the schedule of gross earnings of the defendant. On said exhibit, on the date of October 3, 2002, earnings for the defendant for that time frame, $1,921.58. In similar fashion under day of October 17, 2002, earnings are to the amount of $1,898.22. On October 31, 2002, earnings to the amount of $1,715.42 and on November 14, 2002, earnings of $1,740.85. CT Page 1226
Defendant's Exhibit D reflects two checks apparently having to do with expenses pertaining to the condominiums owned by the defendant.
Defendant's Exhibit C are copies of deposit checks from tenants to the defendant.
Defendant's Exhibit A is a document entitled "Statement of Earnings and Deductions," from the Office of the State Comptroller concerning the defendant.
Defendant's Exhibit B is in similar vein.
Plaintiff's Exhibit 12 is a copy of lease agreement between the defendant and one, Beverly Murphy. Monthly rent noted in the lease agreement is $600.00 a month.
Plaintiff's Exhibit 3 is a memo directed to plaintiffs counsel from the payroll officer of the defendant indicating that as of January 10, 2003 that the defendant would be entitled to a 2% cost of living adjustment.
Plaintiff's Exhibit 4, Uniform Residential Loan Application concerning 184 West Main Street, Niantic. The amount applied for appears to be $35,910.00 concerning the subject property.
Plaintiff's Exhibit 5, HUD, one Uniform Settlement statement concerning 184 West Main Street indicating a contract sales price of $39,900.00.
Plaintiff's Exhibit 6 has to do with an automobile loan for a 1996 Ford Explorer by the defendant. The amount of credit provided to the defendant pursuant to the motor vehicle loan was to the amount of $28,622.89.
Plaintiff's Exhibit 7 concerns 127 Black Point Road, Niantic, Uniform Residential Loan application; the amount applied for, $54,000.00.
Plaintiff's Exhibit 8, HUD settlement statement concerning 127 Black Point Road; contract sale price, $60,000.00.
Plaintiff's Exhibit 9, Uniform Residential Loan application concerning 103 East Pattagansett Road, East Lyme.
Plaintiff's Exhibit 10, settlement statement concerning 103 East Pattagansett Road, Niantic; contract sale price as concerns the borrower, the defendant in these proceedings, $119,149.00.
Plaintiff's Exhibit 11, a Truth and Lending form to the CSP Employees CT Page 1227 Federal Credit Union in Somers indicating an amount financed concerning said application in the amount of $6,500.00.
Plaintiff's Exhibit 30 is merely a statement from East Lyme Water and Sewer Department concerning 103 East Pattagansett. The amount due is $190.69.
Plaintiff's Exhibit 29, Chelsea Groton Savings Bank, summary statement as concerns deposits and transactions by and between the defendant and the bank.
 The Law
As concerns modification of child support, "Any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines," Connecticut General Statutes § 46b-86 (a).
See Santoro v. Santoro, 70 Conn. App. 212, 218 (2002), "In addition, a child support order cannot be modified unless there is (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines absent the requisite findings." See also Prialv. Prial, 67 Conn. App. 70 (2001). See also Unkelbach v. McNary,244 Conn. 350, 355 (1998), "In deciding upon the modified amount of child support to be ordered, the court considered the defendant's present ability to pay." See also Jenkins v. Jenkins, 243 Conn. 584 (1998),Shearn v. Shearn, 50 Conn. App. 225 (1998), Turner v. Turner,219 Conn. 703 (1991).
From Santoro, "the party seeking modification bears the burden of showing the existence of a substantial change in circumstances." InMorris, "the court compared the financial affidavits of each party from the original decree and the present motion found a substantial change in circumstances allowing for an increase in child support payments." The case of Joan E. Gay v. Thomas J. Gay, 70 Conn. App. 772 (July 2002) is instructive. "When determining whether there is a substantial change in circumstances, the court is limited in its consideration to conditions arising subsequent to the entry of the dissolution decree." See Schorschv. Schorsch, 53 Conn. App. 378 (1999). "To permit the trial court to reconsider all evidence dating from before the original divorce proceedings in determining the adjustment of alimony would be in effect to CT Page 1228 undermine the policy behind the well established tool of limiting proof of the substantial change of circumstances to events occurring subsequent to the latest alimony (and/or) support order — the avoidance of relitigating matters already settled," citing Borkowski v. Borkowski,228 Conn. 738 (1993).
"It is black letter law that Connecticut is an equitable distribution property state," Wendt v. Wendt, 59 Conn. App. 656 (2000).
In the instant motion before the court, it would appear that all of the real estate assets as set forth in the defendant's financial affidavit or adverted to in the exhibits were acquired after the dissolution and therefore do not fall into the category of an asset existing at the time of dissolution on August 10, 2000.
The guideline worksheet submitted to the court by plaintiffs counsel suggest in one instance that the support should be $233.73 and in another, $256.08.
 Discussion
The plaintiff requests that the court on the basis of a substantial change in circumstances on the part of the defendant increase the child support order for the two children from $176.13 to $253.00.
The defendant's demotion with his place of employment would appear to be as a result of his own conduct and the fact that the defendant feels that he must pinch every penny and that the properties are in his words "operating at a minus figure," does not seem well founded based on the exhibits presented to the court and the very substantial cash flow that the defendant is realizing in addition to his position with the Department of Corrections. It may well be that as a result of any increased order of support that his equity in these various properties will be somewhat slower and somewhat delayed, but the defendant's first obligation is for the proper support of the two minor children, Felicia and Zachary. In addition, the court is not persuaded on the basis of any clear and convincing evidence that the defendant is actually paying his girlfriend as concerns his present residence allegedly in her name.
The court grants the motion for modification and increases the child support from $176.13 per week to a total of $253.00 a week. This total of course covers both of the children.
The court also notes the handwritten agreement presented to the court after hearing by the plaintiff and the defendant and their respective CT Page 1229 counsel having to do with the defendant's access to the minor children. All is set forth in agreement dated January 13, 2003 and the court accepts the same and it may become an order of the court.
___________________ Austin, J. CT Page 1230