## DONATO SANTORO *v.* REGINA SANTORO
### (AC 21550)

Lavery, C. J., and Schaller and Mihalakos, Js.

*(One judge dissenting)*

Submitted on briefs September 12, 2001—officially released June 4, 2002

*Robert P. Hanahan* filed a brief for the appellant (defendant).

*Opinion*

MIHALAKOS, J. The defendant, Regina Santoro, now known as Regina Zamblauskas, appeals from the judgment of the trial court ordering the plaintiff, Donato Santoro, to pay her $5495 in exchange for the defendant's quitclaiming to him certain property valued at $30,000. The sole issue on appeal is whether the court improperly offset a balance due for child support from the defendant to the plaintiff against a lump sum property settlement due from the plaintiff to the defendant in a matter in which the parties had appeared before the family support magistrate and agreed to a weekly payment of child support from which no appeal was taken. We conclude that the offset was improper for the reasons set forth in this opinion and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the defendant's claim. On November 2, 1992, after a twelve year marriage, the plaintiff brought an action seeking dissolution of the marriage based on its irretrievable breakdown. The parties have one daughter, Stephanie, born in 1986. On July 26, 1993, the court, *McDonald, J.*, rendered judgment dissolving the marriage, establishing custody and visitation, and distributing the parties' property. The court awarded the plaintiff $65 per week in child support to be paid by the defendant. In addition, the court, after finding it to be fair and equitable, incorporated by reference a stipulation entered into by the parties dated July 26, 1993. The stipulated agreement provided, inter alia, that the defendant shall quitclaim to the plaintiff her one-half interest in the jointly owned marital residence, and the plaintiff shall give the defendant the sum of $30,000 over a term of five years secured by a note and mortgage. The parties, however, understood the agreement to require one lump sum of $30,000 at the end of five years. Moreover, the parties executed neither a note nor a mortgage.

Thereafter, the plaintiff alleged that the defendant was delinquent in complying with the court's support order, an allegation that the defendant contested. On July 24, 2000, the defendant filed a motion for contempt, alleging that the plaintiff had failed to make any payment in exchange for the quitclaim deed for the one-half interest in the marital home. On October 12, 2000, after a hearing regarding the defendant's delinquency, the family support magistrate issued an order that the defendant pay to the plaintiff $65 per week in child support, plus an additional $15 per week as part of the existing arrearage of $24,505.

On October 17, 2000, the plaintiff filed a motion to open the judgment of the family support magistrate.[1]

[1] The plaintiff's motion to open the judgment of the family support magistrate was not necessary because "[w]hen an order for child or spousal

On October 30, 2000, the court, *Leheny, J.*, heard the defendant's motion for contempt. The court ordered the plaintiff to record the quitclaim deed and to pay $5495 to the defendant within two weeks. In addition, the court ordered the plaintiff to pay to the defendant $15 per week for thirty-two years.[2] Again, the parties

support has been entered against an obligor by the Superior Court in an action originating in the Superior Court, such order shall supersede any previous order for child support or spousal support against such obligor entered by a family support magistrate . . . ." General Statutes § 46b-231 (q). The court, therefore, had jurisdiction to modify the family support magistrate's child support order.

[2] The plaintiff was ordered to pay to the defendant a total of $30,000 representing the value of his interest in the property. To effectuate that order, the plaintiff was to pay $5495 to the defendant within two weeks and $24,505 over the course of thirty-two years by paying $15 a week. The court came to that resolution after the defendant's attorney argued that the court did not have jurisdiction over the issue of child support. The following colloquy took place:

"[Defendant's Counsel]: Your Honor, there's two proceedings pending. He went to child support enforcement; that was in court before, today. Thought it was over; it's [going to] be back in court on Thursday, for whatever's [going to] happen there, which is his effort to reverse the agreement that was made there.

"All that's before this court is our motion for a finding that he owes $30,000. . . . And then whatever happens on Thursday, happens. Whatever effect that would have . . . I just don't know, but when we were in court in the magistrate's court, this, what we're discussing today was raised there, too. And . . . the attorney general's position was [that] he could not do that. . . .

"The Court: He couldn't handle it. That's right, it's not within his—

"[Defendant's Counsel]: Right.

"The Court:—his bailiwick.

"[Defendant's Counsel]: And she's under an order to pay the state of Connecticut, now, to the bureau of support, through the Fleet Bank. . . . I don't think the court today could do anything here. Because that matter is over there; it's just—

"The Court: The court finds that both parties failed to live up to this dissolution decree and did what they wanted to do, with whatever they agreed to. Leaving the court holding the bag and the court has a real problem with that. The court is going to order that the quitclaim deed be recorded . . . . You're not [going to] be happy with it. That he pay the sum of $30,000 minus $24,505, which is $5495. That if he's going to pay the rest and that's the way you want to work it out, that he pays her whatever he gets on the arrearage. . . . I consider it abominable and I would do away with it. If

returned to court and after a hearing on January 2, 2001, the court ordered the quitclaim deed recorded and the plaintiff to pay to the defendant $5495. That sum is the value of the interest in the property owed to the defendant, which was $30,000, less the child support arrearage owed by the defendant, which was $24,505. This appeal followed.

"With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 530–31, 752 A.2d 978 (1998).

We first address whether the offset was an improper modification of a property assignment. "The court's judgment in an action for dissolution of a marriage is final and binding upon the parties, where no appeal is taken therefrom, unless and to the extent that statutes, the common law or rules of court permit the setting aside or modification of that judgment." *Bunche* v. *Bunche*, 180 Conn. 285, 287–88, 429 A.2d 874 (1980). General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court . . . . This section shall not apply to [property] assignments under section 46b-81 . . . ." The statute, therefore, "deprives the Superior Court of continuing

you're telling me that I don't have the authority to do that, then I will simply say that he has to pay her the sum of $15 a week . . . ."

jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under General Statutes § 46b-81." *Bunche* v. *Bunche*, supra, 289.

Although the court has jurisdiction to assign property in connection with § 46b-81, that assignment is not modifiable. See *Taylor* v. *Taylor*, 57 Conn. App. 528, 533, 752 A.2d 1113 (2000). Moreover, "property distributions . . . *cannot* be modified to alleviate hardships that may result from enforcement of the original dissolution decree in the face of changes in the situation of either party." (Emphasis in original; internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 183–84, 708 A.2d 949 (1998). "[I]t is [however] within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 646, 643 A.2d 874 (1994).

Our resolution of that issue, therefore, turns on whether the court's order modified or merely enforced the property distribution for which the original dissolution decree provided. A modification is "[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." (Internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202, 655 A.2d 790 (1995). If a party's motion "can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation." (Internal quotation marks omitted.) *Woodward* v. *Woodward*, 44 Conn. App. 99, 102, 686 A.2d 1010 (1997). Similarly, when determining whether the new order is a modification, we examine the practical effect of the ruling on the original order. See *Jaser* v. *Jaser*, supra, 202.

The original divorce decree provided that the defendant receive $30,000 for the value of her interest in the marital home. As indicated in a handwritten stipulation, the parties understood that the moneys would be in the form of a lump sum payment and paid five years from the date of dissolution. Because the original decree required the plaintiff to pay the defendant for her interest in the property prior to July 23, 1998, and he has not made a single payment, "noncompliance on the part of the parties made strict adherence to the terms of the [decree] impossible." *Niles* v. *Niles*, 9 Conn. App. 240, 245–46, 518 A.2d 932 (1986).

In its October 30, 2000 order, the court ordered the plaintiff to pay only $5495 up front and the remaining $24,505 over the course of thirty-two years. Thereafter, in its January 2, 2001 order, the court offset the moneys owed to the defendant for her interest in the property against the child support arrearage owed to the plaintiff. We therefore conclude that the court did not alter the terms of the original order, but rather fashioned an appropriate remedy to protect the integrity of the original judgment.

We now turn to the court's disposition of the child support arrearage. A determination of child support arrearage payments must be made in accordance with the child support and arrearage guidelines. General Statutes § 46b-215b. In addition, a child support order cannot be modified unless there is (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines absent the requisite findings. See General Statutes § 46b-86 (a).[3] "The party seeking modification bears the

[3] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of . . . support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in circumstances of either party or upon a showing that

burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 11, 787 A.2d 50 (2001). "In these matters, as in other questions arising out of marital disputes, this court relies heavily on the exercise of sound discretion by the trial court." (Internal quotation marks omitted.) *Wingerd* v. *Wingerd*, 3 Conn. App. 261, 263, 487 A.2d 212, cert. denied, 195 Conn. 804, 491 A.2d 1104 (1985).

The family support magistrate ordered the defendant to pay child support arrearage in the amount of $15 per week in accordance with the child support guidelines. Thereafter, the court modified the magistrate's order by offsetting the child support arrearage owed by the defendant against the property distribution owed by the plaintiff. In ordering the offset without first finding that there was a substantial change in the circumstances of one of the parties, the court did not adhere to the mandates of § 46b-86 (a). Had the court found a showing of a substantial change in circumstances in accordance with § 46b-86 (a), the offset would be proper. Thus, the court improperly applied the law and, therefore, abused its discretion.

The judgment is reversed and the case is remanded to the trial court to consider whether the $30,000 debt owed to the defendant constitutes a substantial change in the defendant's circumstances. If the court finds that there is a substantial change in the defendant's circumstances, the court then can offset the amount owed to the defendant for her interest in the property against the child support arrearage owed to the plaintiff.

In this opinion SCHALLER, J., concurred.

the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

LAVERY, C. J., dissenting in part. I respectfully disagree with the conclusion of the majority because I believe that it was wholly within the equitable power of the court to fashion the rational, common sense solution that it imposed on the parties in this case. The court's order did nothing but hold the parties to the terms of their original stipulation and protect the integrity of the judgment incorporating that stipulation and, as such, it was not an impermissible modification of a property assignment. Furthermore, in crafting its offset order, the court had the authority to displace the order of the family support magistrate requiring the defendant to pay $15 per week toward the child support arrearage for the parties' fifteen year old daughter for the next thirty-two years.

It is well established that a court, subsequent to a dissolution judgment, may not revisit and modify the distribution of property effected by that judgment. General Statutes § 46b-86 (a); *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980). Nonetheless, our case law draws a distinction between orders that result in improper modification and those that serve merely to enforce the original decree.

In *Roberts* v. *Roberts*, 32 Conn. App. 465, 629 A.2d 1160 (1993), the parties stipulated in the dissolution decree that they would sell the marital residence and divide the proceeds, but the defendant was impeding the sale by listing the property at too high a price and by refusing the Realtor reasonable access. In response to the plaintiff's motions for contempt and to expedite the sale by order to lower the asking price, the trial court ordered that the residence be sold by auction and appointed a committee to conduct that auction. Noting that the original decree unquestionably ordered that the property be sold and "recogniz[ing] that it is within the equitable powers of the trial court 'to fashion whatever orders [are] required to protect the integrity of [its

original] judgment' "; id., 471; this court concluded that the trial court properly granted the plaintiff's motion "as it sought only an effectuation of the judgment rather than a modification of it." Id., 472. "Both parties continue[d] to be entitled to 50 percent of the proceeds of the sale"; id.; as contemplated by the original decree.

Similarly, in *Clement* v. *Clement*, 34 Conn. App. 641, 643 A.2d 874 (1994), we concluded that in ordering the plaintiff to pay the defendant $29,500, the trial court did not improperly modify the terms of a prior property distribution, but rather was enforcing it. As part of the dissolution decree, the defendant was awarded the entire interest in the family residence, and the plaintiff was required to hold the defendant harmless on two of three outstanding mortgages on the residence. When the plaintiff failed to make the mortgage payments, a judgment of strict foreclosure entered against the defendant, and the plaintiff no longer was required to make mortgage payments. In response to the defendant's motion for contempt, the trial court ordered the plaintiff to pay her $29,500, an amount which represented the defendant's lost equity in the residence. This court concluded that the trial court acted properly and within its jurisdiction because its order did not change the property assignment but, rather, preserved the integrity of the original judgment. Id., 646.

The majority recognizes this distinction but nonetheless concludes that the court's order, which offset the child support arrearage owed by the defendant against the amount owed by the plaintiff pursuant to the property distribution agreement, was improper. It does so on a ground not raised in the trial court or argued by the parties on appeal. The majority reasons that the court, in crediting the defendant's $24,505 arrearage against the $30,000 due and owing by the plaintiff, effected a "modification" of the order issued by the magistrate some three weeks prior such that the court

first needed to find a substantial change in the parties' circumstances. This elevates form over substance and will result in wasteful use of scarce judicial resources.

I believe that the court had the power to displace the magistrate's support arrearage order. In ordering the offset, the court was not acting on a request for modification, but on the defendant's motion to hold the plaintiff in contempt for failure to abide by the terms of the parties' property settlement agreement. General Statutes § 46b-231 (q) provides in relevant part that "[w]hen an order for child or spousal support has been entered against an obligor by the Superior Court in an action originating in the Superior Court, such order shall *supersede* any previous order for child or spousal support against such obligor entered by a family support magistrate . . . ." (Emphasis added.) This makes sense because a court has jurisdiction to consider a much broader range of issues than does the magistrate, issues that might best be resolved when considered together.[1] The contempt matter originated in the Superior Court. "Supersede" is defined by the Merriam-Webster dictionary as "replace," "displace" or "to take the place of." The court's order, therefore, did not "modify" the magistrate's order but *replaced* it and, as such, there was no need for the court to find a substantial change in circumstances.

"The paramount role of a court when considering domestic relations cases is one of a 'court of equity.' The court's equity powers are essential to its ability to fashion the appropriate relief in domestic relations cases. The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution

---

[1] In this case, as noted in the trial testimony reproduced in footnote 2 of the majority opinion, the magistrate was not authorized to consider the defendant's motion for contempt. The magistrate's jurisdiction generally is limited to support matters. See General Statutes § 46b-231 (m).

of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . ." (Internal quotation marks omitted.) *Labow* v. *Labow*, 13 Conn. App. 330, 351, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). The opinion of the majority unnecessarily constrains the power of the trial court to order the equitable relief appropriate under the circumstances of this case.

I would affirm the judgment.