MAYRA NUNEZ *v.* JORGE NUNEZ
(AC 24863)

Foti, Flynn and McLachlan, Js.

Submitted on briefs September 16—officially released October 26, 2004

*John Serrano* filed a brief for the appellant (defendant).

*Mayra Nunez*, pro se, the appellee, filed a brief.

*Opinion*

PER CURIAM. The defendant, Jorge Nunez, appeals from the trial court's postdissolution judgment holding him in contempt for failing to pay alimony and child support. On appeal, the defendant claims that the court improperly found that he wilfully violated court orders by intentionally producing less reported income in order to avoid paying the court-ordered alimony and child support. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the defendant's appeal.

The parties were married on November 11, 1991, and have two minor children. The marriage was dissolved on November 24, 1999.[1] The court awarded sole custody of the two children to the plaintiff, Mayra Nunez, and ordered, inter alia, the defendant to pay alimony in the amount of $100 per week and child support in the amount of $500 per week.

On April 24, 2001, the defendant filed a motion to open the judgment and for postjudgment modification. The court granted the motion, awarded joint custody and accepted the visitation schedule as proposed by the parties. The plaintiff subsequently requested and received permission to move to Puerto Rico with the children. Additionally, on June 8, 2002, the plaintiff filed a motion for contempt, alleging that the defendant had failed to comply with the alimony and child support orders since March, 2001. Despite receiving two payments totaling $1300, the plaintiff claimed that the defendant's arrearage totaled $8300. On August 5, 2002, the parties agreed to a stipulation that provided, inter alia, that the defendant would be entitled to have the financial orders modified to $100 per week for alimony and $300 per week for child support.[2] The defendant was ordered to make two $1000 payments toward the arrearage and to continue paying $600 per week ($100 for alimony and $500 for child support, $200 of which was to reduce the arrearage) until the arrearage was eliminated.

On June 9, 2003, the plaintiff, acting pro se, filed a second motion for contempt. She alleged that the defendant had ceased paying alimony and child support since November, 2002. On July 21, 2003, the parties agreed that the defendant would tender $500 to the

---

[1] The defendant did not file an appearance for the dissolution proceeding and subsequently was defaulted.

[2] The court noted that this was a deviation from the child support guidelines due to travel expenses.

plaintiff on that date and $600 within one week. On November 5, 2003, the court issued its memorandum of decision, finding the defendant in contempt. The court found that the amount of the defendant's arrearage totaled $28,600 and ordered the defendant to pay the plaintiff $14,300 within sixty days and the balance by December 1, 2003. This appeal followed.

The defendant claims that the court improperly found that he wilfully violated court orders by intentionally producing less reported income in order to avoid paying the court-ordered alimony and child support. Specifically, the defendant argues that his income was insufficient to meet the weekly alimony and child support payments of $600 and that he therefore had a valid defense to the charge of contempt. We disagree.

The sole question before us is whether the court's finding of contempt was improper, not whether the support order was excessive.[3] Thus, we set forth the applicable standard of review that guides the resolution of the defendant's appeal. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Citation omitted; internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001).

The defendant argues that his arrearage stems not from wilful disobedience of the court's order, but

---

[3] There is nothing in the record to suggest that the defendant ever sought to challenge the validity of the original $600 per week order, the resulting arrearage or the modified $400 per week order. The defendant signed both agreements. "[A]lthough one may sympathize with the position in which [a party] finds himself the fact remains that by the separation agreement he made his bed and now must lie in it." (Internal quotation marks omitted.) *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 217, 834 A.2d 730 (2003).

results from insufficient net income to pay a support order that far exceeded the child support guidelines. At the hearing held on August 4, 2003, the defendant testified that he earned $500 per week, sometimes less, working for his brother's carpet company. He also stated that he owed a substantial debt to the Internal Revenue Service and that the carpet installation business that he previously had owned ceased operations in December, 2002, for financial reasons. The court specifically found that the defendant's testimony was not credible. A financial affidavit dated August 5, 2002, indicated the defendant's weekly net income was $1600. That affidavit contradicts the defendant's testimony. Additionally, the plaintiff, whose testimony the court specifically credited, stated that the defendant earned $300,000 in 2001 and $200,000 in 2002. She also stated that the defendant tendered her a check that was returned for insufficient funds.

On the basis of the record before us, we cannot conclude that the court's finding of contempt was an abuse of discretion. It was well within the broad discretion of the court to credit the plaintiff's testimony and evidence, and to find that the defendant failed to address adequately the issue of his reduced income and that he wilfully violated the orders of the court by intentionally producing less income. The trial court, as trier of fact, determined who and what to believe and the weight to be accorded the evidence. "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . We have constantly held to the rule that we will not judge the credibility of witnesses or substitute our judgment for that of the trial court. . . . " (Citations omitted; internal

quotation marks omitted.) *Shearn* v. *Shearn*, 50 Conn. App. 225, 231, 717 A.2d 793 (1998).

Furthermore, in the present case, it is undisputed that the defendant failed to pay the ordered alimony and child support and that, as a result, a substantial arrearage accrued. "[A]n order of the court must be obeyed until it has been modified or successfully challenged. . . . *Mulholland* v. *Mulholland*, 229 Conn. 643, 649, 643 A.2d 246 (1994) (a party has a duty to obey a court order however erroneous the action of the court may be . . .). [Our Supreme Court has] stated that [t]he fact that [a] plaintiff exercised *self-help* when he was not entitled to do so . . . by disobeying the court's order without first seeking a modification was a sufficient basis for the trial court's contrary exercise of discretion. The court was entitled to determine that to exonerate [that] plaintiff would be an undue inducement to litigants' exercise of *self-help*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 719–20, 784 A.2d 890 (2001).

In *Mallory* v. *Mallory*, 207 Conn. 48, 57, 539 A.2d 995 (1988), the defendant father claimed that he was too poor to meet his court-ordered financial obligations. Our Supreme Court, after stating that inability to obey an order qualifies as a proper defense to contempt, stated: "The defendant in the case at bar, however, failed to seek a modification of his child support obligations until after the plaintiff had instituted contempt proceedings against him. In these circumstances, the trial court did not err in finding the defendant in contempt, at least in regard to the child support arrearage accumulated before he sought a modification of the child support orders." Id. It concluded that under those circumstances, a finding of contempt was proper. Subsequently, in *Sablosky* v. *Sablosky*, supra, 258 Conn. 713, our Supreme Court stated that "[a]lthough one

party may believe that his or her situation satisfies this standard [of changed circumstance], *until a motion is brought to and is granted by the court, that party may be held in contempt in the discretion of the trial court if, in the interim, the complaining party fails to abide by the support order.*" (Emphasis added.) Id., 722; see also *Bunche* v. *Bunche*, 36 Conn. App. 322, 325, 650 A.2d 917 (1994) (order of court must be obeyed until modified or successfully challenged).

In the present case, the defendant never sought to challenge the validity of the original support order or the resulting arrearage. As a result of the defendant's unilateral decision to stop paying the support without seeking redress in court, it was not an abuse of discretion for the court to find the defendant in contempt.

The judgment is affirmed.