# STEVEN J. SIMES *v.* SUSAN R. SIMES
## (AC 25604)

Schaller, Gruendel and Harper, Js.

Argued January 3—officially released April 25, 2006

*Harold R. Burke,* for the appellant (plaintiff).

*Norman A. Roberts II,* for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Steven J. Simes, appeals from the trial court's order awarding the defendant, Susan R. Simes, unallocated pendente lite alimony and support totaling $9500 per month.[1] On appeal, the plaintiff claims that the court abused its discretion because (1) its calculation of his gross income is not supported by the evidence and (2) it miscalculated his net income. During the pendency of the appeal, the defendant filed a motion to dismiss, claiming that this court lacks jurisdiction to hear the appeal because it was rendered moot. We conclude that the plaintiff's appeal is not moot and affirm the decision of the trial court.

The following facts are relevant to our resolution of the plaintiff's claims. The parties were married on May 31, 1995, and have two children. The plaintiff conducts business through and collects a salary from SJS Corporation (corporation), of which he is the principal officer and sole shareholder. The plaintiff also operates and collects distributions from Global Investment, LLC (Global), of which he is the sole principal. The defendant did not work outside of the house during the course of the marriage, but rather stayed at home with the parties' children.

On April 14, 2003, the plaintiff commenced the present action to dissolve the parties' marriage. On June 8,

[1] Pendente lite orders of support are immediately appealable. *Hiss* v. *Hiss,* 135 Conn. 333, 336, 64 A.2d 173 (1949).

2004, the court ordered the plaintiff to pay the defendant $9500 per month in unallocated pendente lite alimony and support. The court based its award on a finding that the plaintiff had a gross annual income of approximately $370,000[2] and a net annual income of $222,000. This appeal followed.

On September 9, 2005, the plaintiff filed a motion to modify the pendente lite order. At a hearing on November 3, 2005, several agreements between the parties were read into the record. One agreement stipulated that the plaintiff would continue to pay $9500 per month in unallocated pendente lite alimony and support, subject to resolution of the motion for modification. The plaintiff, however, would be permitted to pay $5000 in cash, and the $4500 balance would be payable to the defendant from the money held in escrow from sale of the marital home. The $4500 withdrawn from escrow would be credited against the plaintiff's equitable share in the marital estate.[3] The defendant filed a motion to dismiss with this court on December 30, 2005, claiming

---

[2] The court arrived at the plaintiff's gross annual income from the sum of three components. The first component was the plaintiff's annual salary, which the court found was $73,992. As to the second component, consulting fees, the court found that the plaintiff received $14,000 in the first quarter of 2004, which it annualized to $56,000. The court then found, as a third component, that the plaintiff received $60,000 in personal expenses from the corporation, over and above his salary and consulting fees, in the first quarter of 2004. The court annualized this amount, for a sum of $240,000. The court then rounded the sum of these components, $369,992, upward to find his gross annual income of $370,000.

[3] The November 3, 2005 hearing did not resolve the plaintiff's motion for modification. Counsel for the plaintiff noted that the motion "will be heard by the trial judge and can be referred to the trial judge for determination." Counsel for the defendant also recognized that the court's order on that day would be "subject to the motion, to the resolution of the motion for modification." The court then observed that if the plaintiff's obligation was to be reduced, he would be given a rebate of the $4500; if not, it would be charged against his share at the time of dissolution. The hearing also left unresolved whether any modification would be retroactive, which the court noted counsel were still entitled to argue.

that the agreement entered into at this hearing rendered the plaintiff's appeal moot. Additional facts will be set forth as necessary.

I

We begin by addressing the threshold issue raised in the defendant's motion to dismiss, namely, whether events occurring after the filing of the plaintiff's appeal have rendered it moot. We conclude that the appeal is not moot and, therefore, deny the defendant's motion to dismiss.

"Mootness implicates [a] court's subject matter jurisdiction and is thus a threshold matter for us to resolve." (Internal quotation marks omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004). Because the determination of whether this court has subject matter jurisdiction is a question of law, our review is plenary. *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 530–31, 865 A.2d 1240 (2005). "Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id., 532.

"Mootness applies to situations where events have occurred during the pendency of an appeal that make an appellate court incapable of granting practical relief through a disposition on the merits. . . . The standards governing mootness are well established. Because this court has no jurisdiction to give advisory opinions, no appeal can be decided on its merits in the absence of an actual controversy for which judicial relief can be granted." (Internal quotation marks omitted.) *Madigan* v. *Madigan*, 33 Conn. App. 229, 231, 635 A.2d 303 (1993); see also *Sweeney* v. *Sweeney*, supra, 271 Conn. 201 (case moot because court could not order relief from pendente lite order no longer in effect because final dissolution judgment had been entered). "It has been

recognized by both this court and our Supreme Court that despite the movant's or the trial court's characterization of [an agreement], a reviewing court examines the practical effect of the responsive ruling in determining [its] nature . . . . On review, we look to the substance of the relief sought . . . and the practical effect of the trial court's responsive ruling." (Citations omitted.) *Fewtrell* v. *Fewtrell,* supra, 87 Conn. App. 532.[4]

The defendant claims that under *Madigan,* because the court's subsequent order replaced the previous financial award from which the plaintiff appeals, no actual controversy exists, and we cannot offer any relief to the plaintiff.[5] We first examine the defendant's argument that the subsequent order replaced the prior financial award. We conclude that the defendant's characterization of the subsequent order is incorrect.

Our resolution of the defendant's claim turns on whether the court's order modified the pendente lite order or merely enforced its original terms. "A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." (Internal quotation marks omitted.) *Santoro* v. *Santoro,* 70 Conn. App. 212, 217, 797 A.2d 592 (2002). "In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." *Fewtrell* v. *Fewtrell,* supra, 87 Conn. App. 531. If the court's action "can

---

[4] We note that in *Fewtrell,* the trial court acted in response to a motion by a party. *Fewtrell* v. *Fewtrell,* supra, 87 Conn. App. 529. In this case, however, the court was entering into the record agreements reached by the parties. Because the practical effect of the court's order is the same in both circumstances, our analysis in this case is the same as where one party has sought relief through a motion.

[5] By arguing that the subsequent order replaced the prior financial award, the defendant is essentially arguing that the later order was a modification of the prior order.

fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the [pendente lite order], this court must favor that interpretation." (Internal quotation marks omitted.) *Roos* v. *Roos*, 84 Conn. App. 415, 423, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004).

This court has "recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Roberts* v. *Roberts*, 32 Conn. App. 465, 471, 629 A.2d 1160 (1993); see also *Fewtrell* v. *Fewtrell*, supra, 87 Conn. App. 531 (order directing plaintiff to make payments directly to defendant was effectuation of order that plaintiff pay sum of defendant's debts). In *Santoro*, the plaintiff was ordered to pay the defendant $30,000 for the value of her interest in the marital residence. *Santoro* v. *Santoro*, supra, 70 Conn. App. 218. When the plaintiff failed to make any payments, however, the court concluded that strict adherence to the terms of the decree was impossible. Id. The court subsequently ordered the plaintiff to make part of the payment up front and the remainder in installments over a number of years. Id. The court also offset moneys owed to the defendant against a child support arrearage owed to the plaintiff. Id. This court concluded that the trial court's conduct "did not alter the terms of the original order, but rather had fashioned an appropriate remedy to protect the integrity of the original judgment." Id. At the time the order was entered in this case, November 3, 2005, the plaintiff had paid only $5000 of his $9500 monthly obligation for October and November. The plaintiff, therefore, needed to make up the $4500 deficiency for each month. We accordingly conclude that the court's order permitting the $4500 monthly shortfall to be paid out of the plaintiff's equitable share of the residence did not alter the terms of the original order, but rather fashioned an

appropriate remedy to protect the integrity of the original award.

Having concluded that the court's subsequent order was an effectuation of its original pendente lite award, we now examine whether an actual controversy remains on which we could grant the plaintiff the relief sought in his appeal. We conclude that there is such a controversy. The defendant relies primarily on *Madigan* in support of her argument that this court does not have jurisdiction to hear the plaintiff's appeal. Unlike *Madigan*, in which an order changing the children's primary residence made moot the appeal by one parent; *Madigan* v. *Madigan*, supra, 33 Conn. App. 231–32; the financial obligation of the plaintiff in this case remains the same as that originally ordered. Accordingly, this court remains capable of offering the plaintiff the relief sought on appeal, which is a ruling on whether the trial court abused its discretion in ordering him to pay $9500 per month in unallocated pendente lite alimony and support.

We conclude, therefore, that this court has subject matter jurisdiction to hear the plaintiff's claims on appeal.

The defendant's motion to dismiss is denied.

## II

The plaintiff first claims that the court abused its discretion because its finding that his gross annual income for 2004 would be $370,000 is not supported by the facts. The plaintiff argues both that the court improperly treated certain payments as income and that it attributed future income to him without an evidentiary basis. We disagree with both arguments.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has

abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Arena* v. *Arena*, 92 Conn. App. 463, 466, 885 A.2d 765 (2005).

A

The plaintiff first argues that the evidence does not support a finding that the $60,000 per quarter in shareholder reimbursed expenses paid to the plaintiff by the corporation was income in the form of company paid living expenses. Rather, the plaintiff characterizes these funds as reimbursement for personal moneys he had advanced to the corporation. Similarly, the plaintiff argues that the evidence does not support a finding that the $14,000 in consulting fees reported on his financial affidavit was compensation solely for his services. Instead, he asserts that Global paid personal expenses from this amount and that the court should have offset these expenses from the payment.

In support of his argument that the moneys received from the corporation and Global are not income, the plaintiff relies on his testimony of the character of those payments. The court, however, questioned the credibil-

ity of the plaintiff, noting that it did not "think he tells the truth in general and that [it thinks] he juggles his books . . . ." The trial court, as trier of fact, determined who and what to believe and the weight to be accorded the evidence. "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . We have constantly held to the rule that we will not judge the credibility of witnesses or substitute our judgment for that of the trial court." (Internal quotation marks omitted.) *Nunez* v. *Nunez*, 85 Conn. App. 735, 738, 858 A.2d 873 (2004). Accordingly, the court acted within its discretion to discredit the plaintiff's testimony as to the nature of the payments.

Notwithstanding the plaintiff's testimony that the court discredited, we must still determine whether the remaining evidence supports the court's determination that the plaintiff's income included these payments. See *Arena* v. *Arena*, supra, 92 Conn. App. 466.

We first look to whether the record supports the court's determination that the plaintiff's gross earnings for the first quarter included the $14,000 consulting fee. The plaintiff's financial affidavit, in a handwritten note, clearly states: "The plaintiff has received $14,000 in consulting fees as of the first quarter of 2004." The plaintiff testified that these fees were paid by the corporation to Global, of which the plaintiff is the sole principal, for consulting services regarding the investment of his money.[6] In light of this evidence, the court's

---

[6] The corporation's "Statement of Operations and Retained Earnings" for the three months ending March 31, 2004, reflected that it had paid $14,000 in consulting fees.

determination that the plaintiff earned $14,000 in gross income from consulting fees in the first quarter was not clearly erroneous.

We now turn to whether the record supports the court's determination that the plaintiff's gross earnings for the first quarter included the $60,000 in stockholder reimbursed expenses.[7] The corporation's "Statement of Operations and Retained Earnings" for the three months ending on March 31, 2004, clearly shows that the corporation paid $60,000 in stockholder reimbursed expenses for that period. The plaintiff is the sole shareholder of the corporation, and he acknowledged that the payment was to him. The plaintiff alleges the $60,000 payment was reimbursement for moneys he had advanced the corporation for transportation and other expenses, for which he was entitled to repayment. The plaintiff, however, offered no evidence to support his testimony, and the court was within its discretion to discredit it.[8] On the basis of the evidence that the plaintiff was the recipient of a $60,000 shareholder reimbursement payment from the corporation, we are not left with the definite and firm conviction that a mistake was made by the court when it included the payment in its calculation of the plaintiff's gross income.[9]

---

[7] The court stated that it "attributed to [the plaintiff] roughly $60,000 in the first quarter in personal expenses that he has taken out of his business over and above his salary and his consulting fees."

[8] When questioned as to the nature of the expenses, the defendant's explanation was that it included parking in New York, travel and taking taxicabs. Such expenses, however, are separately accounted for on the corporation's statement. Moreover, we note that the approximately $3000 per month in transportation and automobile expenses accounted for in the plaintiff's financial affidavit come far short of the average $20,000 per month that the stockholder reimbursement payment is allegedly meant to cover.

[9] The different characterizations of the income may have different tax implications. Certain reimbursed business expenses may be deducted from the plaintiff's gross income to determine his adjusted gross income, then used to determine his net income. See 26 U.S.C. §§ 62, 162. Such tax treatment, however, is a matter that was addressed by the court when calculating the defendant's net income from his gross income. We address the court's findings on the applicable tax rates in part III.

The court's findings on the plaintiff's income, therefore, were not clearly erroneous.

## B

The plaintiff next argues that the court improperly annualized the shareholder reimbursed expenses and the consulting fees because there was no evidence that he would continue to earn income at that level for the remainder of 2004.

In support of his argument that the consulting fees and shareholder reimbursement payments would not continue at the same level during the remainder of 2004, the plaintiff relies entirely on his testimony that his business had been in a state of decline and, thus, consulting fees and shareholder reimbursement payments cannot be expected to continue.[10] As already noted, the court, as the trier of fact, was free to discredit the plaintiff's testimony. See *Nunez* v. *Nunez*, supra, 85 Conn. App. 738–39. The court, therefore, was left with no other evidence from which to conclude that the plaintiff's business would further decline despite his efforts to compensate for the change in circumstances. "It is not the province of this or any court to speculate as to evidence not before it." *Demartino* v. *Demartino*, 79 Conn. App. 488, 497–98, 830 A.2d 394 (2003). Given the speculative nature of the future decline of the plaintiff's business and the lack of evidence to support the claim, the court need not have credited that possibility.[11]

[10] The plaintiff described how changes to estate and capital gains tax laws that became effective in 2003 caused his business in sales of certain investments to decline. The plaintiff further described how he reorganized his business to concentrate on investment management to compensate for the changed circumstances.

[11] The plaintiff, citing *Anderson* v. *Anderson*, 191 Conn. 46, 55–56, 463 A.2d 578 (1983), further argues that even if the court properly discredited his testimony about the nature of his business and his future earnings, it was not free to conclude that the opposite was true. Here, he asserts that the court did so by crediting him with future income without an evidentiary basis. We disagree. The plaintiff's argument misconstrues the nature of the court's order. The plaintiff's financial obligation has been stated in monthly

Moreover, should the plaintiff's speculations come to fruition, and there is a significant change in his circumstances, the plaintiff may seek a modification of the pendente lite order pursuant to General Statutes § 46b-86.[12]

We now examine the court's reasoning in making its financial award. In awarding pendente lite alimony and support, General Statutes § 46b-83 requires that the court consider the same factors used in calculating an award for permanent alimony or support. Such factors include the parties' occupation, amount and sources of income, vocational skills and employability. General Statutes § 46b-82 (a). Here, the court properly relied on its findings that the plaintiff currently earned approximately $74,000 per year in salary, $60,000 per quarter in shareholder reimbursed expenses and $15,000 per quarter in consulting fees.[13] The court then simply multiplied the quarterly amounts by four to put each component into annual terms. The calculation did not attribute additional income to the plaintiff, but merely annualized his current income level. Allowing every reasonable presumption in favor of the award, the court did not abuse its discretion in making a monthly pendente lite unallocated alimony and support order on the basis of its findings of the plaintiff's income.

### III

The plaintiff next claims that the court improperly took judicial notice of his marginal income tax rate

terms, on the basis of the court's findings of the plaintiff's current income level, as supported by the evidence.

[12] The court noted that the plaintiff "may very well be able to claim that the situation is more dire in the future," inferring that he may seek a modification in such situations. The plaintiff, in fact, did seek an order modifying the pendente lite award on September 9, 2005.

[13] The result of this calculation is in line with the plaintiff's previous earnings, even taking into account a decline in business due to the change in tax laws that he testified had taken effect in 2003. In 2003, after the changes had taken effect, the corporation still paid $202,000 in consulting fees to Global.

without affording a hearing and applied that rate in determining his net income. We need not reach the question of whether a hearing was necessary because we conclude that the plaintiff has failed to show that the court's conduct in this regard caused him any harm.

We begin by stating our standard of review. "A trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. . . . Trial courts have broad discretion in determining the relevancy and admissibility of evidence. . . . In order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citation omitted; internal quotation marks omitted.) *Wasson* v. *Wasson*, 91 Conn. App. 149, 157–58, 881 A.2d 356, cert. denied, 276 Conn. 932, 890 A.2d 574 (2005).

"Notice to the parties is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing." (Internal quotation marks omitted.) Id., 157; see also Conn. Code. Evid. § 2-2 (b).[14] A court may take judicial notice of the applicable tax laws. See *Powers* v. *Powers*, 186 Conn. 8, 10, 438 A.2d 846 (1982). Here, the court took judicial notice of a marginal tax rate of 44 percent, but discounted that rate to 40 percent because it believed the plaintiff had

[14] Connecticut Code of Evidence § 2-2 (b) provides: "The court may take judicial notice without a request of a party to do so. Parties are entitled to receive notice and have an opportunity to be heard for matters susceptible of explanation or contradiction, but not for matters of established fact, the accuracy of which cannot be questioned."

written off some personal expenses as business expenses.[15]

The plaintiff argues that because of his "complex personal and professional financial picture," it was improper for the court to take judicial notice of the marginal tax rate and to apply it without affording the parties a hearing. We do not reach this question, however, because the plaintiff has failed to allege any harm he suffered from the court's failure to afford a hearing. Moreover, the court applied the highest possible total marginal tax rate, 40 percent, to the plaintiff's gross income, thereby reducing his net income to the greatest extent possible. The court then utilized this net income in calculating the financial award. Because the plaintiff has not claimed that he was harmed by the court's order, and indeed did not suffer any harm, we do not decide whether the court should have held a hearing before taking judicial notice of the applicable tax laws.

The pendente lite alimony and support awards are affirmed.

In this opinion the other judges concurred.

---

[15] We note that the court judicially noticed an improper marginal tax rate. The highest marginal federal income tax rate in 2004 was 35 percent. Rev. Proc. 2003-85, 2003-49 I.R.B. 1184. The highest marginal state income tax rate in 2004 was 5 percent. General Statutes § 12-700 (a) (6). The highest total marginal income tax rate in 2004 was, therefore, 40 percent. As the court ultimately applied a 40 percent marginal tax rate, this error is harmless and does not change our conclusions.