DORIS FILLION *v.* ROBERT J. HANNON ET AL.
(AC 28120)

DiPentima, Harper and Hennessy, Js.

Argued December 4, 2007—officially released April 1, 2008

*Alfred F. Morrocco, Jr.*, with whom, on the brief, was *Doris Fillion*, pro se, for the appellant (petitioner).

*Duncan J. Forsyth*, with whom, on the brief, was *Thomas C. Blatchley*, for the appellees (respondents).

*Opinion*

DiPENTIMA, J. The petitioner, Doris Fillion, appeals from the judgment of the trial court denying her petition to reopen the assessment of fines by the respondent municipal hearing officer, Robert J. Hannon, for failure to comply with certain cease and desist orders.[1] On appeal, the petitioner claims that the court (1) incorrectly interpreted the Farmington zoning regulations and (2) improperly failed to consider certain claims in her petition. We affirm the judgment of the trial court.

The record reveals the following factual and procedural history relevant to the petitioner's claims. In 1971, the petitioner purchased property located at 28 West District Road in Farmington. In 1975, she erected a single-family dwelling on the property, where she has lived for more than thirty years. Since she began residing there, she has acquired three vehicles. She acquired a Nomad camp trailer in 1978, a Fleetwood Tioga "motor home" in 2001 and a boat with a carry trailer in 2002. She has stored the vehicles on her property from their respective dates of acquisition.

On December 3, 2003, the respondent Martin Tartaglino, assistant zoning enforcement officer for the respondent town of Farmington, received a complaint from a neighbor of the petitioner. The complaint

---

[1] The petitioner named three respondents in her petition: the town of Farmington; the municipal hearing officer, Robert J. Hannon; and an assistant zoning enforcement officer, Martin Tartaglino.

alleged, inter alia, that the petitioner had been storing her "boat and camper trailers" in her front yard for at least one and one-half years. In response to the complaint, Tartaglino conducted an investigation and determined that the petitioner was storing her vehicles in the front of her property in violation of article IV, § 9, of the Farmington zoning regulations, which requires her to store any mobile homes or recreational vehicles behind the longest rear wall of her house or in the rear half of the lot. Consequently, on December 5, 2003, Tartaglino issued to the petitioner a cease and desist order to remove the vehicles from the front yard within ten days. The petitioner did not appeal from that order to the Farmington zoning board of appeals.

Sometime in early 2004, the town of Farmington amended its zoning regulations. Thereafter, on May 19, 2004, Tartaglino sent a letter to the petitioner, informing her of the amendments and offering his assistance in obtaining compliance with the new regulations. After several months passed with no response from the petitioner, on August 9, 2004, Tartaglino issued a second cease and desist order. The petitioner did not appeal from the second cease and desist order, but on November 8, 2004, she filed with the Farmington zoning commission an application for a special permit to continue storing her vehicles in the front of her property. She withdrew her application, however, on November 30, 2004, before the commission had acted on it.

On December 10, 2004, the petitioner still had failed to comply with the cease and desist orders, and Tartaglino issued the first in a series of citations for her ongoing violation of article IV, § 9, of the Farmington zoning regulations. By March 14, 2005, Tartaglino had issued twelve citations, each providing for a penalty of $150, for a total fine of $1800.[2] After she had received the

---

[2] Tartaglino issued the twelve citations, pursuant to Farmington Town Code § 22-3 (A), for the same continued failure over the course of several days to comply with the cease and desist order. He issued the additional

first two citations, on December 29, 2004, the petitioner contested Tartaglino's citations and requested a hearing before the municipal hearing officer, the respondent Hannon.[3]

A hearing was held before Hannon on March 22, 2005. In a written decision, dated October 5, 2005, Hannon determined that the petitioner had violated the Farmington zoning regulations as stated in the citations and assessed a fine of $1800. Hannon's decision, however, offered the petitioner one final opportunity to avoid penalty. Hannon gave the petitioner thirty days to resubmit her application for a special permit, and, if the zoning commission approved her application, Hannon would waive the assessment. The petitioner failed to submit a new application by November 15, 2005, and, on that date, Hannon notified her that the $1800 assessment would not be waived.

Pursuant to General Statutes § 7-152c (g), the petitioner filed a petition with the court to open Hannon's assessment. After a hearing de novo[4] in July, 2006, the court found that the petitioner had violated article IV, § 9, of the Farmington zoning regulations, ordered her to comply with the cease and desist orders imposed by Tartaglino and upheld the assessment of $1800. This appeal followed. Additional facts will be set forth as necessary.

I

The petitioner first claims that the court incorrectly interpreted the Farmington zoning regulations. Specifically, she argues that the court improperly interpreted

citations on December 17 and 30, 2004, and on January 7, 18, 21 and 31, February 4, 18 and 28, and March 7 and 14, 2005.

[3] See General Statutes §§ 7-152c and 8-12a (b). Although Tartaglino issued several of the citations after the petitioner had requested the hearing, Hannon addressed all twelve citations at the hearing.

[4] See Practice Book § 23-51.

article IV, § 9 (C) (1) of the Farmington zoning regulations, which regulates "mobile homes" and "recreational vehicles," as a prohibition against storing her motor home in the driveway next to her house.[5] We are not persuaded.

We begin by setting forth the standard of review. "Because the interpretation of the [zoning] regulations

[5] Alternatively, the petitioner claims that even if her motor home is considered a mobile home or recreational vehicle, the nonconforming use of her property was "grandfathered" pursuant to General Statutes § 8-2 (a). We reject this alternate claim for relief because the petitioner failed to exhaust her administrative remedies. See *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425, 655 A.2d 1121 (1995) ("[i]t is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter" [internal quotation marks omitted]).

The petitioner failed to appeal from the cease and desist orders and failed to apply for an extension of a nonconforming use to the zoning board of appeals, as provided by article V, § 4, of the Farmington zoning regulations. Further, she withdrew her special permit application to the planning and zoning commission before the commission had an opportunity to act on it. Accordingly, the scope of our review is limited to the propriety of Tartaglino's citations pursuant to General Statutes § 8-12a (b) and Hannon's assessment of fines pursuant to General Statutes § 7-152c; we decline to address the cease and desist orders. In any event, the 1996 revision of article IV, § 9, which was in effect at the time the petitioner acquired her motor home in 2001, provides for the same prohibition as the 2004 revision against the storage of recreational vehicles in the petitioner's front yard.

The petitioner also claims in her brief that the court improperly interpreted article IV, § 9, of the Farmington zoning regulations as a prohibition against storing her camp trailer in the front of her property. Because we conclude that the court properly denied her petition on the basis of article IV, § 9, as applied to her motor home, we need not address whether article IV, § 9, applies to the camp trailer as well. The improper storage of any one of the petitioner's vehicles may serve as a basis for the issuance of a citation, and therefore, for purposes of our discussion, it does not matter whether the petitioner also stored the camp trailer in violation of the zoning regulations.

The petitioner further challenges the court's conclusion that Tartaglino had authority to issue cease and desist orders and citations to her. The essence of her claim is that Tartaglino lacked authority to issue cease and desist orders and citations because she was not in violation of the zoning regulations. Given our conclusion that the court properly found the petitioner in violation of article IV, § 9, of the Farmington zoning regulations, this claim also fails.

presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . ." (Internal quotation marks omitted.) *Thomas* v. *Planning & Zoning Commission*, 98 Conn. App. 742, 745, 911 A.2d 1129 (2006).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Farmers Texas County Mutual* v. *Hertz Corp.*, 282 Conn. 535, 541, 923 A.2d 673 (2007). In addition, General Statutes § 1-1 (a) provides in relevant part that "words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." "When a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries." *Czarzasty* v. *Czarzasty*, 101 Conn. App. 583, 589, 922 A.2d 272, cert. denied, 284 Conn. 902, 931 A.2d 262 (2007).

"Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. . . . [W]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction] . . . ." (Internal quotation marks omitted.) *Balf Co.* v. *Planning & Zoning Commission,* 79 Conn. App. 626, 636, 830 A.2d 836, cert. denied, 266 Conn. 927, 835 A.2d 474 (2003). With these legal principles in mind, we turn to the merits of the petitioner's claim.

We begin our discussion by noting that the court, in its memorandum of decision, concluded that the petitioner had stored recreational vehicles in the front of her property in violation of the 1996 revision of article IV, § 9 (C), of the Farmington zoning regulations, which were in effect at the time the petitioner purchased her motor home.[6] Although Tartaglino had issued the first cease and desist order pursuant to the 1996 revision of article IV, § 9, he did not issue the twelve citations until after the town of Farmington had revised article IV, § 9 (C), in 2004. Furthermore, each citation alleged that a violation of article IV, § 9, occurred on the date that the citation was issued.[7] See Farmington Code of Ordinances § 22-3. Accordingly, because, at the time Tartaglino issued the citations, the petitioner did not have a permit to store her recreational vehicles in her front

[6] Article IV, § 9 (C) (1) (Rev. to 1996), of the Farmington zoning regulations provides in relevant part: "No more than a total of two mobile homes or recreational vehicles (including boats or aircraft) may be placed on a parcel of land occupied by a one, two, three or four family home provided they are located [within the rear yard or rear half of the lot and at least 10 feet from side and rear lot lines]."

[7] Tartaglino testified that he had visited the petitioner's property to confirm the violations before issuing each of the twelve citations.

yard as a preexisting nonconforming use; see footnote 5; the 2004 revision of article IV, § 9, governed the storage of recreational vehicles on the petitioner's property. The court, therefore, should have determined whether the petitioner had violated the 2004 revision of article IV, § 9, which was in effect at the time Tartaglino issued the citations. We conclude, however, that on the basis of the petitioner's judicial admissions,[8] she clearly had violated the 2004 revision of article IV, § 9, as alleged in the citations.

The 2004 revision of article IV, § 9 (C) (1), of the Farmington zoning regulations provides in relevant part: "[A] mobile home and/or a recreational vehicle including a boat and aircraft shall be treated the same as a trailer and shall be stored [behind the longest rear wall of the principal building or in the rear half of the lot and at least ten feet from side and rear lot lines]." The zoning regulations provide no definition for the terms "recreational vehicle" or "motor home."

The petitioner argues that the expression "recreational vehicle" is ambiguous and cannot be construed fairly to include her motor home within the scope of article IV, § 9 (C) (1).[9] In support of her argument, she presented as evidence before the court pages from

---

[8] The petitioner states in her petition that her 1997 Fleetwood Tioga is a motor home and that, on the relevant dates, she stored the motor home in the front yard of her property at the rear of her driveway. "[T]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . [The] admission in a pleading or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission . . . ." (Internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 476, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008).

[9] The petitioner also argues that her motor home is not encompassed by the term "mobile home" as that term is used in the zoning regulations. Because we conclude that the meaning of the term "recreational vehicles" includes motor homes, we assume, without deciding, that the term "mobile homes" does not. The petitioner does not dispute, however, that on the days Tartaglino issued the citations, her motor home was not stored behind the longest rear wall of her house or in the rear half of her lot.

several commonly used dictionaries that do not provide a definition for the term "recreational vehicle."[10] Our search for the common understanding of a word or phrase is not confined, however, to the pages of dictionaries. See *Farrior* v. *Zoning Board of Appeals*, 70 Conn. App. 86, 91–95, 796 A.2d 1262 (2002). "We may look to the meaning given the same phrase in unrelated statutes . . . and consider that where the legislature uses the same phrase it intends the same meaning." (Citation omitted.) *Link* v. *Shelton*, 186 Conn. 623, 627, 443 A.2d 902 (1982); see also *Cislo* v. *Shelton*, 40 Conn. App. 705, 721, 673 A.2d 134 (1996), rev'd on other grounds, 240 Conn. 590, 692 A.2d 1255 (1997).

Because article IV, § 9, regulates the petitioner's use and storage of certain motor vehicles on her property, it is appropriate to refer to the motor vehicle statutes for a common understanding of the term "recreational vehicle."[11] At the time the town of Farmington promulgated article IV, § 9, General Statutes (Rev. to 2001) § 14-1 (a) (64) provides: " 'Recreational vehicle' includes the camper, camp trailer and *motor home* classes of vehicles."[12] (Emphasis added.) Thus, when operated on a public highway, the petitioner's motor home clearly and unambiguously is a class of recreational vehicle. The petitioner, however, suggests that once the motor home is parked on her property, it is no longer a recreational vehicle for purposes of the zoning regulations. The petitioner's interpretation leads to an unreasonable

---

[10] The petitioner claims that the court improperly excluded this evidence at trial. Our review of the record, however, reveals that the court, in fact, admitted this evidence as the petitioner's exhibit fifty-two.

[11] We note that the petitioner, during the hearing before the court, argued that the motor vehicle statutes provided an appropriate definition for the term "camp trailer," which she claimed was inconsistent with the respondents' interpretation of that term. See footnote 5.

[12] The legislature first provided this statutory definition of "recreational vehicle" in 1990. Currently it may be found under General Statutes § 14-1 (a) (69).

and irrational result. See *Thomas* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 745. Accordingly, we conclude that the term "recreational vehicle" as used in article IV, § 9, unambiguously prohibited the petitioner from storing her motor home in her front yard. On the basis of her admissions before the court, we further conclude that the petitioner had violated article IV, § 9, as alleged in the citations.

## II

The petitioner next claims that the court improperly excluded as irrelevant evidence in support of her defense that Tartaglino "selectively enforced" the Farmington zoning regulations in violation of the equal protection clause of the fourteenth amendment to the United States constitution. Even if we were to agree with the petitioner, we conclude, nonetheless, that the exclusion of such evidence was harmless.

On the first day of the hearing, the petitioner offered as an exhibit numerous photographs that allegedly depict vehicles similar to hers, i.e., boats, camp trailers and recreational vehicles, being stored in the front and side yards of properties in Farmington, in violation of the zoning regulations. The court excluded the photographs as irrelevant, concluding that "the fact that others were violating the zoning laws and were not enforced is not relevant insofar as [the petitioner is] concerned. . . . [I]t doesn't affect [this] case." The court, however, allowed the petitioner to "argue that there was selective enforcement during oral argument," despite having precluded her from submitting an evidentiary basis for such an argument. Later in the trial, the petitioner made another attempt to introduce the same exhibit through her cross-examination of Tartaglino. Although the court stated that the petitioner would be allowed "to bring the issue of selective enforcement," the court again precluded her from introducing the photographs.

As a threshold matter, we set forth the standard by which we review the court's ruling concerning the admissibility of evidence. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 134, 907 A.2d 1220 (2006). "In order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *Simes* v. *Simes*, 95 Conn. App. 39, 51, 895 A.2d 852 (2006).

The petitioner claimed, as a defense to the citations, that Tartaglino had selectively enforced the Farmington zoning regulations against her in violation of the equal protection clause of the fourteenth amendment to the United States constitution. "The [e]qual [p]rotection [c]lause requires that the government treat all similarly situated people alike. . . . Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. . . . The [United States] Supreme Court [has] affirmed the validity of such class of one claims where the plaintiff alleges that she has been intentionally treated differently from others similarly situated *and that there is no rational basis for the difference in treatment. Village of Willowbrook* v. *Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145

L. Ed. 2d 1060 (2000) (per curiam)." (Citations omitted; emphasis added; internal quotation marks omitted.) *Harlen Associates* v. *Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

A violation of the equal protection clause by selective enforcement is a defense to a municipality's enforcement of its zoning regulations. See *Chaplin* v. *Balkus*, 189 Conn. 445, 448, 456 A.2d 286 (1983); *Carini* v. *Zoning Board of Appeals*, 164 Conn. 169, 174, 319 A.2d 390 (1972) ("failure to comply with zoning ordinances cannot be justified by the existence of other violations *unless* it is shown that a pattern of discrimination has been consciously practiced by the municipality" [emphasis added]), cert. denied, 414 U.S. 831, 94 S. Ct. 64, 38 L. Ed. 2d 66 (1973); see also *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 670–73, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001); *Columbiana* v. *Keister*, 5 Ohio App. 3d 81, 84, 449 N.E.2d 465 (1981). The petitioner ordinarily cannot establish an equal protection violation, however, unless she shows that the respondents consciously applied a different standard of enforcement to similarly situated individuals. *LaTrieste Restaurant* v. *Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1240, 146 L. Ed. 2d 99 (2000). "Mere laxity in the administration of the law, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity. . . . For the plaintiffs to prevail, they must show a pattern of discrimination consciously practiced." (Citations omitted; internal quotation marks omitted.) *Bianco* v. *Darien*, 157 Conn. 548, 559–60, 254 A.2d 898 (1969); see

also *Golab* v. *New Britain*, 205 Conn. 17, 26, 529 A.2d 1297 (1987).

We conclude that even if we assume that the exclusion of the photographs was improper, the petitioner was not harmed. Tartaglino testified that because Farmington's zoning enforcement officers have limited resources, they do not make regular inspections of all properties in town to enforce the zoning regulations. Instead, they make inspections in response to complaints, such as the one lodged against the petitioner. Thus, even if we assume that the photographs conclusively proved that she was similarly situated to other property owners in Farmington, the petitioner failed to allege and failed to offer any evidence that Tartaglino had treated her differently from other property owners or that he had an improper motive for issuing the citations to her. In other words, the petitioner offered no evidence that Tartaglino had received and ignored complaints that other property owners were violating the zoning regulations, while pursuing his enforcement efforts against her with no rational basis for doing so. We conclude, therefore, that the petitioner has failed to demonstrate any harm that resulted from the exclusion of the photographs.

The judgment is affirmed.

In this opinion the other judges concurred.