******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KARIN LAWRENCE *v.* MANUEL CORDS
(AC 37323)

DiPentima, C. J., and Prescott and Mullins, Js.

*Argued February 4—officially released May 17, 2016*

(Appeal from Superior Court, judicial district of
Litchfield, Gallagher, J. [dissolution judgment];
Trombley, J. [contempt motion; motion to terminate
automatic stay].)

*Gregory T. Nolan*, with whom, on the brief, was *Patsy
M. Renzullo*, for the appellant (defendant).

*Regina M. Wexler*, with whom, on the brief, were
*Mark H. Swerdloff* and *Ileen P. Swerdloff*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this marital dissolution action, the defendant, Manuel Cords, appeals from the trial court's postdissolution judgment in favor of the plaintiff, Karin Lawrence, finding the defendant in contempt and ordering him to pay the plaintiff $246,000 plus interest in several installments. On appeal, the defendant claims that the court improperly (1) terminated the automatic appellate stay of execution of a prior order of contempt and (2) modified the division of property postdissolution. We affirm the judgment of the trial court.

The following facts, as found in the record or as stated by this court in *Lawrence* v. *Cords*, 159 Conn. App. 194, 196–98, 122 A.3d 713 (2015) (*Lawrence I*), and procedural history are relevant to our consideration of the defendant's claims. "The marriage of the parties was dissolved on November 19, 2013. Pursuant to that judgment, the court, *Gallagher, J.*, issued various orders regarding the parties' marital property. With respect to their real property, the court ordered, inter alia:

" '7. Upon payment of $246,000 by the defendant to the plaintiff as set forth herein, the plaintiff shall quitclaim all her right, title and interest in 61 [Phelps][1] Road [(property)] to the defendant. The defendant shall hold the plaintiff harmless on all notes and mortgages regarding the Colebrook properties.[2] . . .

" '8. The defendant shall pay to the plaintiff the sum of $246,000 within 60 days of notice of this decision. Should the defendant fail to pay the sum of $246,000 to the plaintiff in the time period allotted, the defendant shall take whatever steps necessary to remove the cloud on the title he caused to be placed in the name of Sibling Associates, and the parties shall immediately thereafter cause 61 Phelps Road to be placed on the market. The sales price will be determined by the real estate broker. Upon sale of the subject property, the proceeds shall be paid out as follows: payment in full of the Webster Bank mortgage; $246,000 plus interest on said sum at the legal rate to the plaintiff; remainder to the defendant. Said interest begins running sixty days from the date of this decision.'

"On January 27, 2014, the plaintiff filed a motion for contempt on the ground that the defendant had failed to comply with the above-referenced orders of the court. Specifically, she alleged that more than sixty days had passed since the date of the dissolution judgment, but that the defendant had not paid her the ordered sum of $246,000, nor had the defendant taken any steps to list the subject property for sale. She claimed that the defendant failed to hold her harmless for the mortgage on the property and that she had paid it for the months of December, 2013, and January, 2014. She thus asked the court to find the defendant in contempt, 'together with appropriate orders, including a reasonable attor-

ney fee necessitated by the requirement that she file this motion.'

"The court, *Gallagher, J.*, held a hearing on the plaintiff's motion for contempt on February 10, 2014, at which both parties testified. Following that testimony and oral argument by attorneys for both parties, the court ruled from the bench, finding the defendant in contempt because he did not pay the mortgage on the property or put the house on the market. . . . The court ordered that the house be put on the market within seven days and that the defendant pay the property taxes on the property. The court held: 'Now, he has assets to pay her; he can either do that or he—he can do one of two things in seven days. He can either pay her the $246,000 plus the money that he owes on the mortgage payments that she made or he can start paying—he can put it on the market within seven days, and he can also pay the taxes that are owed and pay the monthly payments on the mortgage.' The court also ordered the defendant to pay attorney's fees in the amount of $800 for the plaintiff's attorney." (Footnotes added.) Id.

The defendant appealed to this court from the court's finding of contempt, arguing that the court improperly modified the property distribution order by requiring him to pay the mortgage on the property and found him in contempt for not paying the mortgage. On August 11, 2015, this court held that the court's order effectuated, rather than modified, its dissolution order regarding the payment of the mortgage, but because the dissolution order had been ambiguous concerning the mortgage payment, the defendant's noncompliance was not wilful, and, thus, the court's finding of contempt was improper. Id., 200, 202.

While *Lawrence I* was pending before this court, on March 20, 2014, the plaintiff filed a second motion for contempt on the ground that the defendant continued to fail to pay the mortgage on the property and the property taxes. On July 21, 2014, the plaintiff also filed a motion to terminate the automatic stay of execution of the February 10, 2014 order that was in place as a result of the filing of the appeal in *Lawrence I*. The plaintiff alleged that the appeal in *Lawrence I* had been taken only for the purpose of delay, and, thus, the automatic stay of execution should be terminated.

On August 5 and 11, 2014, a hearing on the motions was held. After hearing testimony from both parties and the defendant's real estate broker, Marshall Cohen, the court, *Trombley, J.*, issued an oral ruling from the bench on August 11, 2014. The court explicitly declined to terminate the automatic stay with regard to the February 10, 2014 order that the defendant pay the property taxes and attorney's fees. The court then found the defendant in contempt for failing to make the mortgage payments and for failing to pay the plaintiff for her

share of the property or to put the property on the market. The court ordered the defendant "to reimburse the [plaintiff] $16,783.68, which is the mortgage [that] she paid . . . and [to] make monthly payments, commencing with the September payment, of the principal and interest to Webster Bank [the mortgager] until the [property] is sold or until the [plaintiff] is paid her $246,000 plus interest.

"Second, the [defendant] shall make the $246,000 payment to the [plaintiff] in installments, each to include the [10] percent accumulated interest. First installment of $82,000 is to be paid on or before December 1, 2014, plus interest; second installment is to be paid, $82,000, on or before July 1, 2015, plus interest; and the final installment of $82,000 is to be paid by December 31, 2015, plus interest." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly terminated the automatic stay of execution of the February 10, 2014 order that was triggered, pursuant to Practice Book § 61-11 (a),[3] by the filing of the appeal in *Lawrence I*. Specifically, the defendant argues that by ruling on issues that were before the Appellate Court—namely, whether the defendant was required to pay the mortgage on the property—the court improperly terminated the automatic stay of execution of the February 10, 2014 contempt order.[4] We decline to review this claim because it is not presented properly for resolution on appeal.

Practice Book § 61-14 provides in relevant part: "The sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under [Practice Book §] 66-6.[5] Execution of an order of the court terminating a stay of execution shall be stayed for ten days from the issuance of notice of the order, and if a motion for review is filed within that period, the order shall be stayed pending decision of the motion, unless the court having appellate jurisdiction rules otherwise. . . ." (Footnote added.) Thus, "[i]ssues regarding a stay of execution cannot be raised on direct appeal. The sole remedy of any party desiring . . . [review of] . . . an order concerning a stay of execution shall be by motion for review . . . ." (Internal quotation marks omitted.) *Santoro* v. *Santoro*, 33 Conn. App. 839, 841, 639 A.2d 1044 (1994); see also *JP Morgan Chase Bank* v. *Gianopoulos*, 131 Conn. App. 15, 23, 30 A.3d 697 ("[t]he trial court's decision to terminate an appellate stay is subject to review only pursuant to a timely motion for review"), cert. denied, 302 Conn. 947, 30 A.3d 2 (2011); *Housing Authority* v. *Morales*, 67 Conn. App. 139, 140, 786 A.2d 1134 (2001) ("[i]ssues regarding a stay of execution cannot be raised on direct appeal" [internal quotation marks omitted]).

If the defendant here believed that the effect of the court's ruling was a termination of the automatic stay of execution, he was obligated to file a motion for review. Having failed to do so, he is precluded now from raising this issue on direct appeal. Accordingly, we decline to review the claim.

## II

The defendant also claims that the court improperly modified postdissolution the property distribution order. Specifically, he argues that the court improperly reallocated the property distribution by ordering the defendant to pay the plaintiff $246,000 for her share in the property from his personal assets, rather than from the proceeds from the sale of the property. The plaintiff responds that the court's order did not modify the dissolution judgment but effectuated it. We agree with the plaintiff that the court's order properly effectuated the property distribution of the judgment of dissolution.

The following additional facts are relevant to this claim. The relevant portions of the judgment of dissolution provide that:

"3. The plaintiff's interest in [her mutual bonds and trusts] is hers and hers alone.

"4. The defendant's interest in Sibling Associates [a limited partnership that he entered into with his siblings] is his and his alone.

"5. The plaintiff's retirement account and all bank accounts in her name are hers and hers alone.

"6. The defendant's retirement account and all bank accounts in his name are his and his alone.

"7. Upon payment of $246,000 by the defendant to the plaintiff as set forth herein, the plaintiff shall quitclaim all her right, title and interest in [the property] to the defendant. The defendant shall hold the plaintiff harmless on all notes and mortgages regarding the Colebrook properties.

"8. The defendant shall pay to the plaintiff the sum of $246,000 within 60 days of notice of this decision. Should the defendant fail to pay the sum of $246,000 to the plaintiff in the time period allotted, the defendant shall take whatever steps necessary to remove the cloud on the title he caused to be placed in the name of Sibling Associates, and the parties shall immediately thereafter cause 61 Phelps Road to be placed on the market. The sales price will be determined by the real estate broker. Upon sale of the subject property, the proceeds shall be paid out as follows: payment in full of the Webster Bank mortgage; $246,000 plus interest on said sum at the legal rate to the plaintiff; remainder to the defendant. Said interest begins running sixty days from the date of this decision."

During the hearing on the second motion for con-

tempt, the court found that the defendant had not paid the plaintiff the $246,000 owed to her pursuant to paragraphs 7 and 8 of the dissolution judgment but that he had the assets to do so. The court stated: "Does [the defendant] have assets or the wherewithal to pay the $246,000. You bet. He's got $217,500 equity in the very real estate that's being marketed. He's got $120,000 in a stock account. . . . Of his $404,000 in liability, [$]363,000 is listed to . . . Cords and Sibling Associates." The court also found that the defendant had not placed the property on the market and noted that the defendant had gone out of his way to make the property unmarketable by drafting a listing agreement[6] that included a listing price that was more than the court appraised price and an eleven page addendum, detailing every potential defect in the property. The court then ordered the defendant to "make the $246,000 payment to the [plaintiff] in installments, each to include the [10] percent accumulated interest." The court also ordered the parties to place the property on the market, without the eleven page addendum, with an initial listing price of $795,000, which should be reduced by 3 percent every ninety days but not less than $625,000.

"[O]ur statutes give the court the authority to dispose of and to distribute the marital estate in a dissolution proceeding. See General Statutes § 46b-66 (a) (authority to incorporate separation agreement dealing with disposition of property); General Statutes § 46b-81 (authority to assign property and to allocate liabilities and debts of parties). Additionally, [General Statutes] § 46b-1 gives the court the jurisdiction to entertain, as family matters, all matters affecting or involving: (1) [d]issolution of marriage . . . and (17) all such other matters within the jurisdiction of the Superior Court concerning children or family relations as may be determined by the judges of said court.

"[I]t is equally well settled . . . that . . . . [t]he court's authority to transfer property appurtenant to a dissolution proceeding rests on § 46b-81.[7] . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . .

"Although the court does not have the authority to modify a property assignment,[8] a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment." (Citations omitted; footnotes added; internal quotation marks omitted.) *Roos* v. *Roos*, 84 Conn. App. 415, 421–22, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004). "[I]t is . . . within the equitable powers of the trial court to fashion whatever orders [are] required

to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Santoro* v. *Santoro*, 70 Conn. App. 212, 217, 797 A.2d 592 (2002). "This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) *Callahan* v. *Callahan*, 157 Conn. App. 78, 89, 116 A.3d 317, certs. denied, 317 Conn. 913, 914, 116 A.3d 812, 813 (2015).

"If a party's motion can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation. . . . Similarly, when determining whether the new order is a modification, we examine the practical effect of the ruling on the original order." (Citation omitted; internal quotation marks omitted.) *Roos* v. *Roos*, supra, 84 Conn. App. 422–23.

"In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. [T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Schneider* v. *Schneider*, 161 Conn. App. 1, 7, 127 A.3d 298 (2015).

The defendant argues that the dissolution judgment granted him the choice between paying the plaintiff the $246,000 within sixty days or paying the plaintiff for her interest in the property from the proceeds of the sale of the property. The defendant contends that because he chose to pay the plaintiff from the proceeds of the sale of the property, the court improperly modified the property distribution by requiring him to pay the plaintiff from his personal assets, which the judgment of dissolution awarded to him and him alone, prior to the sale of the property. We conclude, however, that the court's consideration of, and decision on, the plaintiff's motion for contempt did not alter the terms of the judgment of dissolution, but rather fashioned a remedy

appropriate to protect the integrity of its original judgment.

The judgment of dissolution provided that the plaintiff would receive $246,000 for the value of her interest in the property. If the defendant failed to pay this sum to the plaintiff within sixty days from the date of dissolution, the property would be placed on the market and the plaintiff would be paid the $246,000 from the proceeds of the sale. Contrary to the defendant's argument, this provision does not provide him with a choice between paying the plaintiff from his personal assets or from the proceeds of the sale of the property. Rather, this provision seeks to ensure that the plaintiff receives the sum owed to her by the defendant. The court found that there was substantial equity in the property. Thus, in the event that the defendant failed to pay the plaintiff within sixty days, the court in the judgment of dissolution inserted a safety valve to guarantee that the plaintiff received $246,000 by ordering the property to be placed on the market.

The defendant had almost nine months between the date of dissolution and the August 11, 2014 order to either pay the plaintiff or work with the plaintiff to place the property on the market. The defendant did neither. Additionally, the court found that the defendant hindered the sale of the property by attaching an eleven page addendum to the proposed listing agreement, detailing every potential defect to the property. The defendant not only failed to comply with the judgment of dissolution, but also acted to impede the sale of the property, and, thus, "noncompliance on the part of the parties [has] made strict adherence to the terms of the [judgment of dissolution] impossible." (Internal quotation marks omitted.) *Santoro* v. *Santoro*, supra, 70 Conn. App. 218. The only option left to the court to enforce the judgment was to fashion "an appropriate remedy to protect the integrity of the original judgment." Id. That is precisely what the court did.

The court's order that the defendant pay to the plaintiff $246,000, plus interest, in three installments over the course of a year is analogous to the effectuation of the judgment of dissolution in *Santoro* v. *Santoro*, supra, 70 Conn. App. 218. In *Santoro*, the judgment of dissolution ordered the plaintiff to pay the defendant $30,000 as a lump sum within five years from the date of dissolution, which the plaintiff failed to do. Id. The trial court subsequently found the plaintiff in contempt and ordered the plaintiff to pay to the defendant $5495 up front and $24,505 over the course of thirty-two years to effectuate the original judgment. This court upheld that determination on appeal because it was an order effectuating, not modifying, the original judgment. Id. This court held that once strict adherence to the terms of the judgment of dissolution is impossible, the court may fashion an appropriate remedy to effectuate the

orders of the judgment. Id.; see also *Simes* v. *Simes*, 95 Conn. App. 39, 41, 44–45, 895 A.2d 852 (2006) ("[T]he plaintiff had paid only $5000 of his $9500 monthly obligation . . . . The plaintiff, therefore, needed to make up the $4500 deficiency for each month. We accordingly conclude that the court's order permitting the $4500 monthly shortfall to be paid out of the plaintiff's equitable share of the residence did not alter the terms of the original order, but rather fashioned an appropriate remedy to protect the integrity of the original award.").

In the present case, sixty days from the date of dissolution had passed and the court found that the defendant had prevented the property from being placed on the market. Strict adherence to the terms of the judgment of dissolution was impossible, and, thus, the court fashioned an appropriate remedy to protect the integrity of the judgment. The original judgment awarded the plaintiff $246,000 for her share in the property to be paid from either the defendant's personal assets or from the proceeds of the sale of the property. This is precisely what the August 11, 2014 order seeks to effectuate.

Furthermore, the court did not directly order the defendant to pay the plaintiff from his personal assets. In other words, the defendant was not necessarily required to liquidate his personal assets, like his retirement account, to make the installment payments, because the court also ordered the parties to place the property on the market, without the eleven page addendum. The court left open the possibility that the property would be sold and that the defendant then could pay the plaintiff from the proceeds of the sale. Given the defendant's reticence in complying with the court's orders, however, the court ensured that the plaintiff would receive the sum owed to her within a specified span of time one way or another.

In sum, the defendant's contemptuous actions rendered strict compliance with the judgment of dissolution impossible, and, thus, the court crafted an appropriate remedy to effectuate the judgment. Accordingly, we conclude that the court did not improperly modify the property distribution postdissolution.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that in its judgment of dissolution, the court referred to the property as 61 Phelps Road initially, but later identified the property as 61 Colebrook Road. Our review of the record shows that the property in question is located at 61 Phelps Road in Colebrook.

[2] In addition to 61 Phelps Road, the defendant was the sole legal owner of additional land near 61 Phelps Road.

[3] Practice Book § 61-11 (a) provides in relevant part: "Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to file an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause. . . ."

[4] We note that to the extent that the defendant argues in his brief that the court improperly violated the automatic stay of execution, rather than terminated it, such a claim was waived by the defendant on appeal. At oral

argument to this court, the defendant's counsel specifically stated that the claim being raised is that the court improperly terminated the automatic stay, not that it improperly violated it.

[5] Practice Book § 66-6 provides in relevant part: "The court may, on written motion for review stating the grounds for the relief sought, modify or vacate . . . any order made by the trial court concerning a stay of execution in a case on appeal . . . . Motions for review shall be filed within ten days from the issuance of notice of the order sought to be reviewed. . . ."

[6] Although the parties did not place the property on the market, the defendant did draft a listing agreement with his real estate broker. The property, however, never was listed because the plaintiff would not sign the listing agreement on the ground that the eleven page addendum and high listing price were unreasonable.

[7] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect."

[8] We recognize that there are conflicting decisions of this court regarding whether the modification of a property distribution postdissolution implicates the court's subject matter jurisdiction or merely its statutory authority. Compare *McLoughlin* v. *McLoughlin*, 157 Conn. App. 568, 575–76 n.5, 118 A.3d 64 (2015) ("we note that the distribution of personal property postdissolution does not implicate the court's subject matter jurisdiction but, rather, its statutory authority"), and *Roos* v. *Roos*, 84 Conn. App. 415, 421–22, 853 A.2d 642 (noting that distribution of personal property postdissolution is question of statutory authority, not subject matter jurisdiction), cert. denied, 211 Conn. 936, 861 A.2d 510 (2004), with *Forgione* v. *Forgione*, 162 Conn. App. 1, 6–7, 129 A.3d 766 (2015) (stating that court lacked subject matter jurisdiction to modify property distribution postdissolution), and *Sousa* v. *Sousa*, 157 Conn. App. 587, 596, 116 A.3d 865 ("by subsequently [postdissolution] modifying the order dividing the plaintiff's pension benefits equally between the parties, the court acted outside of its jurisdictional authority"), cert. granted, 317 Conn. 917, 118 A.3d 61 (2015). See also *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980) ("[b]y its terms, the statute deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81"); *Smith* v. *Smith*, 249 Conn. 265, 273, 752 A.2d 1023 (1999) ("[T]he statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate . . . [and] confers authority on the trial courts to retain continuing jurisdiction over orders of periodic alimony, but not over lump sum alimony or property distributions pursuant to § 46b-81." [Citations omitted; internal quotation marks omitted.]). These cases, however, do not address the distinction made by our Supreme Court in *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999), that "the court's authority to act pursuant to a statute is different from its subject matter jurisdiction." Because we find that the court's August 11, 2014 order effectuated, rather than modified, the judgment of dissolution, we need not address this issue.