******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# JOHN AVERY ET AL. *v.* LUIS MEDINA ET AL.
## (AC 38689)

Lavine, Alvord and Beach, Js.

*Syllabus*

The plaintiff landowners brought this action seeking, inter alia, a temporary and permanent injunction requiring the defendant landowners, A and L, to cease construction of a pole barn and a stone wall on certain of their real property. The trial court subsequently rendered judgment denying in part the plaintiffs' request for injunctive relief. The plaintiffs appealed to this court, claiming, in part, that the trial court improperly found that the stone wall was not a prohibited permanent structure pursuant to a restrictive covenant in the defendants' deed. This court agreed with the plaintiffs and reversed the judgment only as to the trial court's finding that the defendants' construction of the stone wall did not violate the restrictive covenant prohibiting the erection of permanent structures within a 100 foot setback area. Subsequently, the trial court, pursuant to direction from this court, rendered judgment for the plaintiffs on their request for injunctive relief requiring the defendants to remove all portions of the stone wall that were within the 100 foot setback area. In 2014, the plaintiffs filed a motion for contempt, which the trial court granted, finding that the defendants had failed to comply with its prior orders by failing to remove all portions of the stone wall within the setback. Although the defendants did subsequently remove the stone wall, the plaintiffs filed another motion for contempt in 2015, claiming, in part, that the defendants had erected another stone wall in the setback area. The trial court granted in part the plaintiffs' motion for contempt, finding, in relevant part, that L was in contempt as to the stone wall, and ordering L to remove the stone wall and to pay $1500 in attorney's fees to the plaintiffs. On the defendants' appeal to this court, *held*:

1. The defendants could not prevail on their claim that, in granting the plaintiffs' 2015 motion for contempt, the trial court impermissibly modified the substantive terms of its judgment by converting a mandatory injunction into a prohibitive injunction that forbade any structure from being constructed in the setback, not just a permanent structure, which is prohibited by the language of the restrictive covenant; the trial court did not impermissibly alter the terms or the nature of the injunction, but merely ordered the defendants to remove stones that they had placed in the setback area after they had removed the stone wall, which the court did to effectuate its original judgment, and although the stones were not permanently affixed to the land and were lower in height than the original stone wall, they nevertheless formed a prohibited permanent structure because they were intended to remain permanently in their present location to keep trespassers out.

2. The defendants' claim to the contrary notwithstanding, this court's judgment in the prior appeal and the subsequent order of the trial court requiring the defendants to remove all portions of the stone wall within the 100 foot setback, which was prohibited by the clear language of the restrictive covenant in the deed, were clear and unambiguous, and, thus, sufficient to support the contempt finding, and the stones within the setback constituted a permanent structure that violated the restrictive covenant in the defendants' deed.

3. The defendants' claim that the trial court's contempt finding deprived them of a fundamental property right was unavailing; that court did not deprive the defendants of their entire interest in their real property, as the court did not convey the defendants' interest in their land, but merely sanctioned the defendants for disobeying the judgment to remove the stone wall in the setback, and the court granted the plaintiffs' 2015 motion for contempt in order to vindicate its prior judgment ordering the defendants to remove the stone wall within the setback, which was rendered pursuant to the restrictive covenant in the deed that the defendants had voluntarily signed.

The defendants' claim that the trial court abused its discretion by awarding

the plaintiffs $1500 in attorney's fees was not reviewable, the defendants having failed to preserve the claim at the contempt hearing by failing to object to the plaintiffs' request for an additional $1500 in attorney's fees, or to seek to have the plaintiffs present evidence in support of their request for attorney's fees.

Argued February 14—officially released July 11, 2017

(Appeal from Superior Court, judicial district of Litchfield, Pickard, J.)

*Procedural History*

Action for, inter alia, a temporary and permanent injunction requiring the defendants to cease construction of a stone wall on certain of their real property, and for other relief, brought to the Superior Court in the judicial district of Litchfield and tried to the court, *Pickard, J.*; judgment denying in part the plaintiffs' request for injunctive relief; thereafter, the plaintiffs appealed to this court, which reversed in part the judgment of the trial court, and remanded the case with direction to render judgment in part for the plaintiffs; subsequently, the court, *Pickard, J.*, granted the plaintiffs' motion for contempt; thereafter, the court, *Pickard, J.*, granted in part the plaintiffs' motion for contempt, and the defendants appealed to this court. *Affirmed.*

*Luis A. Medina*, self-represented, with whom was *Richard R. Lavieri*, for the appellants (defendants).

*Shelley E. Harms*, with whom was *David Torrey*, for the appellees (plaintiffs).

*Opinion*

LAVINE, J. This dispute between the parties, which returns to this court for the third time, concerns the enforcement of a restrictive covenant in the deed to real property in Norfolk that is owned by the defendants, Luis Medina and Amanda Medina. The defendants appeal from the judgment of the trial court finding Luis Medina in contempt of the judgment rendered pursuant to *Avery* v. *Medina*, 151 Conn. App. 433, 94 A.3d 1241 (2014) (*Avery I*). On appeal, the defendants claim that the court improperly (1) modified the *Avery I* judgment by transforming a mandatory injunction into a prohibitive injunction, (2) exceeded its equitable powers, (3) denied them a fundamental right, and (4) awarded the plaintiffs attorney's fees for which there was no evidence. We affirm the judgment of the trial court.

The relationship among the parties and the underlying history of their ongoing dispute is set forth in detail in *Avery I*. Id., 435–40. The following facts are relevant to the present appeal. In April, 2003, David Torrey, the defendants, and the plaintiffs, John Avery, Elisabeth Avery, and Shelley Harms (collectively, co-owners), purchased 55.72 acres of land in Norfolk.[1] Id., 435–36. The co-owners agreed in writing to subdivide the 55.72 acres into two four acre building lots and one approximately 47 acre lot, which was to be conveyed to the Norfolk Land Trust, Inc. Id., 436–37. John Avery and Elisabeth Avery received one of the four acre lots (Avery lot) and the defendants received the other four acre lot (Medina lot). Id., 437.

Harms, acting on behalf of the co-owners, engaged Michael Sconyers, a lawyer, to draft the deeds to the Avery and Medina lots. Id. Sconyers advised that the language in the deeds should differ in two respects from the language in the co-ownership agreement. "The co-ownership agreement stated that the Avery lot and the Medina lot will contain deed restrictions providing that the lot shall not be further divided, will contain only one single-family dwelling, and not more than two additional outbuildings with a reasonable setback from the road for any structures and will be subject to a right of first refusal for each of the other co-owners . . . . The co-ownership [agreement] was silent as to enforcement of these deed restrictions." (Internal quotation marks omitted.) Id. Sconyers advised that the "reasonable setback" language "should be made more specific and that there should be persons named to enforce the restrictions." (Internal quotation marks omitted.) Id.

Pursuant to Sconyers' advice, the language in the deeds to the Avery and Medina lots states in relevant part that "any permanent structure erected on the property shall be located at least 100 feet distant from the westerly line of Winchester Road." (Internal quotation

marks omitted.) Id. The deed for the Medina lot also states that the restrictions in the deed "shall be enforceable by [the] Grantors, their heirs and assigns *in perpetuity*, as an appurtenance to the property of the Grantors." (Emphasis added; internal quotation marks omitted.) Id., 437–38. The grantors are the co-owners.

The plaintiffs and Torrey signed the deeds on August 8, 2004, and the defendants, who also are lawyers, signed them on August 10, 2004. Id., 438. Subsequently, the defendants constructed a house, a carriage house, and a shed on the Medina lot. Id. In November, 2011, Luis Medina informed Torrey that the defendants were going to build a "pole barn" near the carriage house. (Internal quotation marks omitted.) Id., 439. Torrey advised Luis Medina that the pole barn would be a "third outbuilding" on the lot and a violation of the restrictive covenant in the deed. (Internal quotation marks omitted.) Id. The defendants nonetheless began to construct the pole barn.[2] Id.

The plaintiffs commenced the underlying action to enforce the restrictive covenant in the Medina deed and sought "an injunction prohibiting further construction of the pole barn and an order that it be removed." (Internal quotation marks omitted.) Id. While the action was pending, the defendants built a stone wall along the southern and eastern borders of the Medina lot, a portion of which was twenty feet from Winchester Road.[3] Id. Consequently, the plaintiffs amended their complaint to allege that the wall was "a new permanent structure in violation of the restrictive covenant in the defendants' deed [that] prohibits new permanent structures within 100 feet of the road." (Internal quotation marks omitted.) Id. The plaintiffs sought injunctive relief and requested costs and punitive damages. Id.

The case was tried to the court, which issued its memorandum of decision on November 12, 2013. The court found that the pole barn violated the restrictive covenant that "limits development on [the defendants'] property to one single-family dwelling and no more than two additional outbuildings . . . ." Id., 440. The court found, however, that the stone wall was not permanent in nature and, therefore, did not violate the restrictive covenant prohibiting permanent structures within 100 feet of Winchester Road. Id. The court ordered the defendants to remove the pole barn in thirty days. Id. The court did not find that the defendants' conduct was wanton or malicious and did not award the plaintiffs punitive damages. Id. The plaintiffs appealed to this court.

On appeal, in *Avery I*, the plaintiffs claimed, among other things, that the court improperly found that the wall was not a permanent structure pursuant to the Medina deed. Id. This court agreed; id., 447; and reversed the judgment "only as to the [trial] court's finding that the defendants' construction of the stone

wall did not violate the restrictive covenant prohibiting the erection of permanent structures within 100 feet of the westerly line of Winchester Road . . . ." Id., 451. This court remanded the case to the trial court "with direction to render judgment for the plaintiffs on their request for injunctive relief requiring the defendants to remove all portions of the stone wall that are within 100 feet of the westerly line of Winchester Road." Id.

Pursuant to this court's remand order, on August 20, 2014, the trial court rendered judgment for the plaintiffs "on their request for injunctive relief requiring the defendants to remove all portions of the stone wall that are within 100 feet of the westerly line of Winchester Road."[4]

On December 3, 2014, the plaintiffs filed a motion for contempt asking the court to find the defendants in contempt for failing to comply with the court's orders dated November 20, 2013,[5] and August 20, 2014. The plaintiffs stated that although more than thirty days had passed since the court had ordered the defendants to remove the pole barn, the pole barn was still standing on the Medina lot. Moreover, the plaintiffs represented that the defendants failed to remove all portions of the stone wall within the 100 foot setback. The plaintiffs asked the court to find the defendants in contempt for every day they remained in violation of the court's order, and for costs and attorney's fees pursuant to General Statutes § 52-256b. The defendants objected to the motion for contempt, arguing that they were not in wilful noncompliance with the judgment and that they did not have the financial wherewithal to remove the pole barn. On December 19, 2014, the court found Luis Medina to be in contempt of its orders. The court continued the matter to January 5, 2015, "during which period of time the defendant is ordered to fully comply with the court's orders. If the contempt has not been full[y] remedied a fine will be imposed for every day there is noncompliance."

On January 6, 2015, the court ruled on the plaintiffs' motion for contempt, ordering: "The defendants, Luis Medina and Amanda Medina, are found to be in contempt of the orders of the court. The defendants are ordered to remove all the stones from the wall on or before February 1, 2015. Commencing [January 5, 2015], the defendants shall pay the plaintiffs the sum of $100 per day until the stones are removed. The plaintiffs are awarded attorney's fees in the amount of $1,500."

On July 8, 2015, Harms filed an affidavit of noncompliance, attesting that Luis Medina had not fully complied with the court's order because he failed to pay the plaintiffs $100 per day until the stone wall was completely removed. Luis Medina needed six days from, and including, January 5, 2015, to remove the wall, and had paid the plaintiffs only $400, not $600. In addition, Harms attested that Luis Medina had failed to remove

the pole barn completely, as one of the pole supports remained standing. Luis Medina filed a counteraffidavit in which he attested that the stone wall was removed within four days of January 5, 2015, and that other stones, not part of the stone wall, were removed two days later. He further attested that he had paid the attorney's fees of $1500.

The plaintiffs filed another motion for contempt against the defendants on September 24, 2015. In that motion, the plaintiffs represented that the defendants had failed to fully remove the pole barn, failed to pay the $200 balance of the fine, and have "reerected a stone wall in the exact area where they were ordered to remove it." The defendants objected, asking the court to deny the plaintiffs' motion for contempt because they had removed the stone wall that the plaintiffs claimed was a permanent structure. The defendants argued that they had removed the stone wall that the plaintiffs alleged was a permanent structure, and that the court's order did not prohibit them from having stones on their property.

The parties appeared for oral argument on the motion for contempt on November 23, 2015. At the hearing, Luis Medina argued that the stone wall to which the plaintiffs were then objecting merely consisted of loose stones along the southern boundary of the defendants' property. A photograph of what Luis Medina termed "loose stones" was placed into evidence. The court rejected the defendants' argument, stating: "If that's not a stone wall, I don't know what it is. . . . There is no question in my mind that the law as laid down by the Appellate Court includes what's shown in that picture as a stone wall."[6] The court issued its ruling on November 25, 2015, ordering, "[a]s to previously imposed fines, the court does not make a finding of contempt, but does find that Mr. Medina owes $200 to the plaintiffs, which is ordered to be paid by December 11, 2015. As to the remaining pole from the pole barn, the court finds it to be a negligible item that need not be removed, and the court does not make a finding of contempt. As to the stone wall, the court does make a finding of contempt against Mr. Medina. The stones [shown in the photograph that was placed into evidence] are ordered removed on or before [December 11, 2015]. The court orders Mr. Medina to pay $1500 in attorney's fees to the plaintiffs on or before December 11, 2015." The defendants appealed.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must

then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) *Ciottone* v. *Ciottone*, 154 Conn. App. 780, 788–89, 107 A.3d 1004 (2015).

I

On appeal, the defendants claim that in granting the plaintiffs' 2015 motion for contempt, the court impermissibly modified the substantive terms of its judgment by converting a mandatory injunction into a prohibitive injunction that forbade any structure, not just a permanent structure, from being constructed in the setback. We disagree.

The defendants' claim requires us to examine the judgment rendered pursuant to this court's decision in *Avery I* to determine whether it was clear and unambiguous. "In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. [T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as whole." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, 165 Conn. App. 473, 484–85, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016).

On the basis of our review of the injunction judgment and the underlying circumstances, we conclude that the court did not impermissibly alter the terms or the nature of the injunction. The facts found at trial reveal that the co-owners purchased the 55.72 acres of land to prevent it from becoming heavily developed and made the majority of the land available to the Norfolk Land Trust. The co-ownership agreement, which the defendants signed, provided that there was to be a reasonable setback from the road for any permanent structures. The deed to the Medina lot provided that "any permanent structure erected on the property shall be located at least 100 feet distant from the westerly line of Winchester Road." The defendants signed the deeds on August 10, 2004.

In *Avery I*, this court determined that the wall in question was a permanent structure. After reviewing the trial court's factual findings regarding the size, struc-

ture, height, and appearance of the stone wall, and examining the photographic evidence in the record, this court found that "there can be no doubt that the defendants intend for the wall to remain firmly in the same place where it was erected and [not be] moved or relocated on a seasonal basis." (Internal quotation marks omitted.) *Avery* v. *Medina*, supra, 151 Conn. App. 447. For that reason, this court concluded that the wall was a "permanent structure that is *prohibited by the clear language of the restrictive covenant contained in the defendants' deed.*" (Emphasis added.) Id. On remand, the court rendered "judgment for the plaintiffs on their request for injunctive relief requiring the defendants to remove all portions of the stone wall that are within 100 feet of the westerly line of Winchester Road," and ordered the defendants to remove the stone wall, which they did. Thereafter, they placed stones lower in height in a similar position within the setback area. The plaintiffs filed a motion for contempt claiming, in part, that the defendants reerected a stone wall in the setback area and therefore failed to comply with the court's orders. The defendants objected to the motion for contempt arguing, in part, that the court did not prohibit any stones on their property. At the hearing on the motion for contempt, Luis Medina argued that there were just loose stones along the southern boundary of the defendants' property. The court rejected that representation stating: "If that's not a stone wall, I don't know what it is. . . . There is no question in my mind that the law as laid down by the Appellate Court includes what's shown in that picture as a stone wall."

On appeal, the defendants claim that the court modified the judgment whereby they were ordered to remove the stone wall. "A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, supra, 165 Conn. App. 484.

The substance of the defendants' claim is that the stone wall that replaced the wall they were ordered to remove is not permanently affixed to the land. This is a distinction without a difference. At oral argument before us, the defendants stated that the stones were necessary to denote the boundary of their land to keep hikers and other trespassers out. Regardless of the height of the stones now in place within the setback, given their purpose to keep trespassers out, they are intended to remain permanently in their present location.

"Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judg-

ment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Gong* v. *Huang*, 129 Conn. App. 141, 154, 21 A.3d 474, cert. denied, 302 Conn. 907, 23 A.3d 1247 (2011). "This is so because [i]n a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Emphasis omitted; internal quotation marks omitted.) *Fuller* v. *Fuller*, 119 Conn. App. 105, 115, 987 A.2d 1040, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010). For the foregoing reasons, we conclude that the court did not modify the injunction judgment, but merely ordered the defendants to remove the stones in the setback to effectuate its original judgment.

## II

The defendants claim that the injunction ordered on remand from *Avery I* was vague and precluded a finding of contempt. We do not agree.

As we set forth previously, an appellate court's analysis of a judgment of contempt consists of two parts, the first of which is to determine whether the underlying order constituted an order that was sufficiently clear and unambiguous to support the contempt judgment. See *Ciottone* v. *Ciottone*, supra, 154 Conn. App. 788–89. In *Avery I*, this court determined that the stone wall was "prohibited by the clear language of the restrictive covenant in the defendants' deed§ because there was no doubt that the defendants intended for it to remain in place where it was erected and not moved on a seasonal basis. *Avery* v. *Medina*, supra, 151 Conn. App. 447. On remand, the trial court ordered the defendants "to remove all portions of the stone wall that are within 100 feet of the westerly line of Winchester Road."

We employ the plenary standard of review when construing a judgment or order of the court. *Lawrence* v. *Cords*, supra, 165 Conn. App. 484. "The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment." (Internal quotation marks omitted.) Id., 485. On the basis of our examination of this court's judgment in *Avery I* and the subsequent order of the trial court, we conclude that the judgment and order to remove the stone wall were clear and unambiguous. The stones within the setback constitute a permanent structure that violates the restrictive covenant in the Medina deed. The defendants' claim therefore fails.

## III

The defendants claim that the court's contempt finding stripped them of a fundamental property right. We disagree.

On appeal, the defendants argue that the court's contempt finding deprives them of the use of 25 percent of their property because it exceeds the "permanent structure" restriction in the deed to the Medina lot by prohibiting stones within the setback area. At the hearing on the plaintiff's motion for contempt, Luis Medina made the same argument to which the court responded: "No, no, no. I'm saying that you cannot put permanent structures within 100 feet of the road. And we went through this one time and it's been found by the Appellate Court that a stone wall, regardless of whether it's cemented or not cemented, is a permanent structure."[7]

The defendants rely on *Edmond* v. *Foisey*, 111 Conn. App. 760, 961 A.2d 441 (2008), to support their claim. *Edmond*, however, is not on point with the facts of the present case. In *Edmond*, the trial court conveyed the defendant's entire interest in real property to the plaintiff. Id., 766–67. This court reversed the judgment of contempt, concluding that the trial court abused its discretion by depriving the defendant of her entire interest in her real property. Id., 775–76. In the present case, the court sanctioned the defendants for disobeying the judgment rendered in *Avery I* to remove the stone wall in the setback. It did not convey the defendants' interest in their land.

"Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Ciottone* v. *Ciottone*, supra, 154 Conn. App. 794.

The deed to the Medina lot contains a restrictive covenant that provides in relevant part: "[a]ny permanent structure erected on the Property shall be located at least 100 feet distant from the westerly line of Winchester Road." In *Avery I*, this court concluded that a stone wall within the 100 foot setback constituted a violation of the restrictive covenant. *Avery* v. *Medina*, supra, 151 Conn. App. 447. The court granted the plaintiffs' 2015 motion for contempt to vindicate its prior judgment, which was rendered pursuant to the restrictive covenant in the deed to the Medina lot. The defendants voluntarily signed the deed and, therefore, they cannot prevail on a claim that they were deprived of a fundamental right when the court vindicated its prior judgment by finding Luis Medina in contempt.

IV

The defendants also claim that the court abused its discretion by awarding the plaintiffs $1500 in attorney's fees because there was no evidence to support the award. The defendants failed to preserve this claim

at the hearing on the motion for contempt, and we, therefore, decline to review it.

On September 24, 2015, the plaintiffs filed a motion for contempt in which they alleged that the defendants failed to completely remove the pole barn, failed to pay the remaining $200 fine owed to them, and placed a line of stones in the exact place where they were ordered to remove the stone wall. The plaintiffs argued that the defendants had flouted the court's orders and had twice been found in contempt. The plaintiffs asked that the defendants again be found in contempt, and ordered to comply with the court's judgment and to pay costs and attorney's fees pursuant to General Statutes § 52-256b.[8] The defendants filed an objection to the motion for contempt but did not object to the plaintiffs' request for attorney's fees. At the contempt hearing, the plaintiffs asked for "attorney's fees of $1500, the same as [the trial court] ordered on January 6."[9] The defendants did not object or request that the plaintiffs present evidence in support of their request for attorney's fees. The court ordered "another $1500 of attorney's fees."

"It is fundamental that claims of error must be distinctly raised and decided in the trial court." *State* v. *Faison*, 112 Conn. App. 373, 379, 962 A.2d 860, cert. denied, 291 Conn. 903, 967 A.2d 507 (2009). See Practice Book § 5-2 (party intending to raise question of law subject to appeal must state question directly to judicial authority); Practice Book § 60-5 (court not bound to consider claim unless distinctly raised at trial or arose subsequent to trial).

"Although the proponent bears the burden of furnishing evidence of attorney's fees at the appropriate time, once the plaintiffs . . . make such a request, the defendants should [object] or at least [respond] to that request." *Smith* v. *Snyder*, 267 Conn. 456, 480–81, 839 A.2d 589 (2004). An appellate court will not reverse an award of attorney's fees if the defendants fail to object to a bare request for attorney's fees. Id., 481. "In other words, the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request." Id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The co-owners are three married couples. Torrey is married to Harms, but he is not a plaintiff in this action. When the co-owners purchased the 55.72 acres, each couple received a one-third undivided interest in it. *Avery* v. *Medina*, supra, 151 Conn. App. 436.

[2] The defendants failed to secure a building permit for the pole barn, and the town of Norfolk issued them a cease and desist order. *Avery* v. *Medina*, supra, 151 Conn. App. 439.

[3] "The wall [was] approximately three feet high, with two large, six feet high stone pillars. There [was] a large wooden gate attached to one of the pillars, and a 1.5 foot fence that . . . attached to the top of the wall. The [trial] court found that the wall was large, heavy and immobile." *Avery* v. *Medina*, supra, 151 Conn. App. 447.

[4] During the course of the plaintiffs' appeal, the conflict between the

parties continued. On December 11, 2013, the defendants filed a motion to open the judgment and modify its order to state, "[w]ithin the next [thirty] days the defendant shall remove from their property one of the outbuildings identified in the [court's] memorandum, leaving two outbuildings on [the defendants'] land." The defendants wished to remove the utility shed, which would cost them significantly less than it would cost to remove the pole barn. The plaintiffs objected, arguing in part that the pole barn was an illegal structure in that it was constructed without a building permit, and that the defendants had the opportunity to present evidence as to the cost of removing structures on the Medina lot at trial, but failed to do so.

On February 26, 2014, the court denied the defendants' motion to open, stating, "[t]he evidence in this case concerned the pole barn, not a shed. The defendant had the option of removing the shed before the pole barn was constructed so as to avoid this problem. It would not be proper for the court to permit the defendant to change the facts under which the case was tried." The defendants filed a motion asking the court to reconsider its order denying their motion to open and modify the corrected memorandum of decision on or about March 18, 2014, and the plaintiffs filed an objection to it. On May 19, 2014, the court sustained the plaintiffs' objection to the motion to open and modify. The defendants appealed from the judgment denying their motion to open. This court affirmed the judgment of the trial court in a memorandum decision. See *Avery* v. *Medina*, 153 Conn. App. 909, 100 A.3d 476 (2014) (*Avery II*).

[5] Subsequent to issuing its November 12, 2013 memorandum of decision, the trial court issued a corrected memorandum of decision on November 20, 2013.

[6] We have reviewed the photograph in the record and conclude that the court's finding is not clearly erroneous. During oral argument before this court, Luis Medina argued that the wall is necessary to keep trespassers and hikers on the land conservancy's property from walking on the defendants' land.

[7] The following colloquy also transpired between the court and Luis Medina during the hearing on the plaintiffs' motion for contempt.

"Luis Medina: [Y]ou've made your ruling. I need to clarify it for the record because I have to be able to discern what it is that I'm not able to do on my property.

"The Court: You can't have a permanent structure within 100 feet of the road, you know that.

"Luis Medina: That I understand.

"The Court: The Appellate Court [has] determined that a stone wall is a permanent structure. What you just had your contractor construct in Plaintiffs' Exhibit 2 is in my finding a stone wall.

"Luis Medina: Right.

"The Court: Remove it.

* * *

"The Court: I'm not asking you to do anything other than [not to] violate the restriction in your deed."

[8] General Statutes § 52-256b (a) provides in relevant part: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt."

[9] A hearing on the plaintiffs' December 2014 motion for contempt was held on January 6, 2015. The record reflects the following colloquy.

"Torrey: And, Your Honor, lastly, our motion to request reasonable legal fees for: the appearances, both preparing the motion, appearing the first time, appearing yesterday and appearing today. Right. I spent an hour and a half preparing the motion. I spent two hours on the first hearing. I spent two hours yesterday and whatever time we're spending today. So that's a total of five and a half hours, plus whatever it is today, which is now going on at least an hour and a half. So that's seven hours' worth of legal time. My normal hourly rate is $300 an hour, but . . . I would have no objection to you finding a reasonable hourly rate for that.

"The Court: Anything further?

"Luis Medina: I leave it to the court's decision. I . . . said what I had to say. There was no wilful desire on my part not to comply with the court's order."